John T. LEMAY and Yvonne P. Lemay, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 87-4594.

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1988.

C. Jerre Lloyd, McLeod, Little, Hopkins & Lloyd, Lake Charles, La., for petitioners-appellants.

Fred T. Goldberg, Jr., Chief Counsel, I.R.S., Michael L. Paup, Michael C. Durney, Acting Asst. Atty. Gen., William S. Rose, Jr., Ann Belanger Durney, Chief Appellate Sec., Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before POLITZ, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Petitioners John T. and Yvonne P. Lemay filed a petition in the United States Tax Court seeking redetermination of the deficiencies determined by the Commissioner of Internal Revenue in their joint federal income taxes for 1981 and 1982. The dispositive issue addressed by the tax court was whether, during the period John T. Lemay was in Tunisia in 1982, he established a "tax home" in Tunisia within the meaning of 26 U.S.C. § 911(d)(3) so as to entitle the Lemays to a foreign earned income exclusion. Because we agree with the tax court that Lemay's "abode" remained in Louisiana during the relevant period, we affirm.

I. FACTS AND PROCEDURAL HISTORY

At all times during 1982, John T. Lemay was employed by the Penrod Drilling Company (Penrod) as an assistant drilling superintendent on an offshore oil rig located in the territorial waters of Tunisia. Lemay's work schedule consisted of alternating twenty-eight day periods on and off duty. After working on the oil rig for a continuous period of twenty-eight days, Lemay would travel from Sfax, Tunisia, to his

residence in Lake Charles, Louisiana, where he would remain for a continuous rest period of twenty-eight days until he had to return to Tunisia. Penrod paid all of Lemay's expenses associated with his travel between Louisiana and Tunisia. Additionally, Penrod provided Lemay's food and lodging while in Tunisia and paid the Tunisian government all taxes relating to Lemay's earnings from his employment with Penrod.

In a typical twenty-eight day work period, Lemay spent all of his time on board the rig, and was on call twenty-four hours a day. Due to Lemay's supervisory position with Penrod, however, he was occasionally permitted to travel to the mainland of Tunisia where Penrod had established a main office in Sfax. While he was in Sfax, Lemay stayed either in a hotel room or an apartment paid for by Penrod. On the Tunisian mainland, Lemay had minimal contact with local Tunisian residents, although he did meet some municipal officials, participate in some informal gatherings with Tunisian employees of Penrod, and attend a local soccer match.

During his employment with Penrod in Tunisia, Lemay's wife and daughter resided in the house Lemay maintained in Lake Charles, Louisiana. After his twenty-eight day work period in Tunisia, Lemay always returned home to his family for the entire twenty-eight day rest period. Lemay was registered to vote in Lake Charles, maintained his bank account in Lake Charles, and possessed a Louisiana state driver's license.

The Lemays timely filed a joint federal income tax return in 1982, reporting that during 1982 Mr. Lemay was a bona fide resident of Tunisia for 209 days and claiming a foreign earned income exclusion in the amount of $42,750.00, equal to fifty-seven percent of his total salary of $73,-365.63. In 1985, the Commissioner determined a deficiency in the Lemays' joint federal income taxes for 1982.[1] Thereafter, the Lemays filed a petition in the tax court seeking a redetermination of the deficiency. On May 19, 1987, the tax court rendered a decision in favor of the Commissioner, upholding the 1982 deficiency and concluding that John T. Lemay was not a "qualified individual" so as to entitle the Lemays to the foreign earned income exclusion provided by 26 U.S.C. § 911. The court based its decision on the fact that John T. Lemay's "abode" in 1982 was in Lake Charles, Louisiana, and, therefore, his "tax home" was not in Sfax, Tunisia. The Lemays appeal the tax court's decision.

## II.  DISCUSSION

Section 911(a)(1), as in effect in 1982, permitted a "qualified individual" to exclude from gross income for tax purposes up to $75,000.00 of foreign earned income.[2] The Code defines a "qualified individual" as one who has a "tax home" in a foreign country and who is (1) a citizen of the United States, and establishes to the satisfaction of the Secretary that he has been a "bona fide resident" of a foreign country for an uninterrupted period which includes an entire taxable year (bona fide residence test), or (2) a citizen or resident of the United States, and who is physically present in a foreign country for at least 330 full days during the taxable year (physical presence test). Section 911(d)(1)(A)–(B). Thus, to be entitled to the foreign earned income exclusion within the context of section 911, an individual must have his "tax home" in a foreign country and satisfy either the "bona fide residence" requirement or "physical presence" requirement of section 911(d)(1).

---

1. As previously noted, the Commissioner also determined a deficiency in the Lemays' taxes for 1981. At trial, however, the Lemays conceded that the deficiency asserted for 1981 was correct; therefore, only the 1982 determination was at issue.

2. In pertinent part, § 911(a)(1) provides:

(a) Exclusion from gross income—At the election of a qualified individual (made separately with respect to paragraphs (1) and (2)), there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year—
(1) the foreign earned income of such individual, and
.   .   .   .   .

At trial, the Lemays conceded that John T. Lemay did not meet the "physical presence" test of section 911(d)(1)(B). Instead, the Lemays argued that Lemay was a bona fide resident of Tunisia for the requisite period in 1982. However, the tax court did not reach the issue of Lemay's status, or lack thereof, as a bona fide resident of Tunisia due to the court's conclusion that Lemay's "tax home" was not in Tunisia during 1982. The term "tax home" is defined by section 911(d)(3) as follows:

The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States.

In addition to the pertinent code section, the regulations under section 911 further define "tax home" as follows:

(b) Tax home.... Thus, under section 911, an individual's tax home is considered to be located at his regular or principal (if more than one regular) place of business or, if the individual has no regular or principal place of business because of the nature of the business, then at his regular place of abode in a real and substantial sense. *An individual shall not, however, be considered to have a tax home in a foreign country for any period for which the individual's abode is in the United States.* Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean that the individual's abode is in the United States.

Section 1.911–2(b) (emphasis added). Thus, an individual's "tax home" for purposes of the foreign earned income exclusion de-

pends on the application of a general rule subject to an overriding exception that the individual's "abode" not be in the United States. *Bujol v. Commissioner,* 53 T.C.M. 762, 763 (CCH 1987).[3] In the instant case, the tax court found that Lemay's "abode" remained in the United States at all times during 1982. By so finding, the court necessarily concluded that Lemay's "tax home" was not located in Sfax, Tunisia.

The determination of an individual's "tax home" pursuant to section 911(d)(3) is a legal issue, not a factual one. While the tax court determines the underlying facts, the ultimate conclusion to be drawn from those facts is a question of law. *Carpenter v. United States,* 495 F.2d 175, 178 (5th Cir.1974). *See also United States v. Winthrop,* 417 F.2d 905, 910 (5th Cir.1969).

An examination of circuit precedent reveals no cases interpreting the definition of "tax home" within the context of section 911 as it relates to the limiting "abode" language. However, in *Bujol v. Commissioner,* the tax court, addressing virtually identical facts to those in the instant case, held that the taxpayer's "abode" remained at his residence in Louisiana. The *Bujol* court concluded that the plain meaning of the term "abode" required such a result, stating:

'Abode' has been variously defined as one's home, habitation, residence, domicile or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of 'abode' depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, 'abode' has a domestic rather than vocational meaning, and stands in contrast to 'tax home' as defined for purposes of section 162(a)(2).

*Id.* at 763–64 (footnote omitted). The *Bujol* court reasoned that the taxpayer's economic, familial, and personal ties to Louisiana, and his lack of contact with the foreign country dictated a conclusion that the taxpayer's "abode" remained in the United States. *Id.*

---

3. In this respect, we note that a taxpayer's "tax home" for purposes of § 162(a)(2) is at his principal place of business or employment. *See Masline v. Commissioner,* 462 F.2d 1328 (5th Cir.1972). In the event that an individual's

"abode" is in the United States, however, a "determination of that individual's 'tax home' within the meaning of section 162(a)(2) is immaterial" for purposes of § 911. *Bujol,* 53 T.C.M. at 763.

In the instant case, the tax court, relying primarily on *Bujol,* likewise determined Lemay to have strong economic, familial, and personal ties to his residence in Lake Charles and, therefore, concluded that Lemay's "abode" remained in the United States in 1982. We do not perceive error in this conclusion. While the regulations do provide that the maintenance of a dwelling in the United States does not necessarily mean that an individual's abode is in the United States, Lemay did more than merely maintain his dwelling in Lake Charles, Louisiana. Lemay spent approximately half of his time with his family in Louisiana. He voted in Louisiana, maintained a bank account in Louisiana, and possessed a Louisiana driver's license. The combination of these factors, when contrasted with Lemay's transitory contacts with Tunisia, support the conclusion that Lemay's "abode" remained in Louisiana in 1982. The fact that Lemay occasionally travelled to the mainland of Tunisia and spent some time with local Tunisian residents does not warrant a different result.[4]

## III. CONCLUSION

In sum, we believe that the tax court's interpretation and application of section 911 in the instant case is consistent with the plain language of the Code and regulations thereunder. On the facts before us, we cannot say that the tax court committed error in concluding that John T. Lemay's "abode" was in the United States. We, therefore, affirm the tax court's conclusion that Lemay was not entitled to the foreign earned income exclusion of section 911.

AFFIRMED.

---

**4.** We note that two recent tax court decisions, while not addressing the specific issue presented in the instant case, have determined whether individuals in positions analogous to Lemay's are entitled to foreign earned income exclusions. In *Darden v. Commissioner,* 53 T.C.M. 498 (CCH 1987), and *Sparks v. Commissioner,* 53 T.C.M. 818 (CCH 1987), the taxpayers were offshore oil rig workers in foreign waters who worked alternating 28–day shifts. In both cases, the taxpayers were held not to be entitled to the foreign earned income exclusion. In *Darden,* the taxpayer failed to satisfy the "bona fide residence" requirement, and in *Sparks,* the taxpayer failed to satisfy the "physical presence" requirement. The *Darden* and *Sparks* decisions illustrate that petitioners such as Lemay are, in many respects, no different than offshore oil rig workers who work off the coast of Louisiana.