CHESLEY O. JAMES AND SHIRLEY B. JAMES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
James v. Commissioner
Docket Nos. 43737-86; 34536-87.
United States Tax Court
T.C. Memo 1988-266; 1988 Tax Ct. Memo LEXIS 294; 55 T.C.M. (CCH) 1112; T.C.M. (RIA) 88266; June 22, 1988. H. Cranston Pope, for the petitioners. J. Craig Young, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in and additions to petitioners' income taxes as follows: Addition to Tax
Year
Deficiency
Section 6661 [1]
1982
$  5,989.00
-
1983
$ 10,504.00
-
1984
$ 11,743.01
-
1985
$ 12,252.00
$ 3,063.00
*296 After concessions, the issue for decision is whether petitioner [2] was a qualified individual under section 911(a) during the years at issue for purposes of the foreign earned income exclusion. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and exhibits associated therewith are incorporated herein by reference. Petitioners' legal residence when they filed their petitions in these cases was in Panama City, Florida. Petitioners filed joint federal income tax returns for the years in issue and an amended return for 1982 with the Internal Revenue Service Center in Philadelphia, Pennsylvania. Petitioner was employed by Seco Industries, Inc. ("Seco") as a mechanical technician in a work compound near Cabinda, Angola, from June 22, 1981 through the years in issue. Petitioner was responsible for maintenance and repair of rotary equipment at the compound and also attempted to train local Angolans to be mechanics. The compound covered approximately 40 to 45 acres and was surrounded by a security fence with land-mines on the perimeter. Petitioner's work schedule *297 consisted of on-duty work periods of six weeks followed by off-duty periods of four weeks. During on-duty periods, petitioner lived and worked in the compound and was provided with food and housing at Seco's expense. Because of the political unrest in Angola it was dangerous for Americans to leave the work compound; therefore, Seco required petitioner to remain in the compound during on-duty periods. The only time petitioner left the compound during on-duty periods was to assist with mechanical problems at the request of local government officials. Seco expected petitioner to help with such problems in order to maintain good relations with the Angolans. Petitioner never left the compound for purely recreational purposes. During off-duty periods, petitioner was required by Seco and the Angolan government to leave Angola due to the political unrest. Petitioner was not required to go to the United States and could have gone to any country during his off-duty periods if he had wished. However, upon completion of each work period, petitioner immediately returned to his wife and home in Panama City. Seco provided petitioner with round trip airline tickets between the Panama City *298 airport and the airport near the compound. Petitioner's father, who lived in Oklahoma, was in poor health throughout the years in issue. After returning to Panama City from Angola, petitioner usually would drive to Oklahoma and spend about two weeks there visiting with and caring for his father. However, petitioner would have returned to Panama City after each work period even if he had not needed to care for his father. Petitioner's living quarters in the compound consisted of a single room with a shared bath. He kept clothing, a radio, a tape player and other personal property in his living quarters during both on-duty and off-duty periods. During petitioner's off-duty periods, these quarters were used by other employees. About three-fourths of the approximately 2,000 people employed at the compound were Angolans. Some of the Angolans lived in the compound but most resided in the surrounding villages and in Cabinda which was located about 35 miles away. The compound had its own small golf course and other recreational facilities where the employees played golf, soccer, and softball. Angolan soccer teams from the surrounding area visited the compound to play. *299 Petitioner was required to have a resident visa by Angola which permitted him to work in Angola. He also had an Angolan driver's license. Petitioner did not speak Portuguese, the primary language of Angola. Petitioner never intended to become a resident of Angola. His physical presence there was due entirely to his employment. Petitioner's wife inherited their residence in Panama City in 1973 and both of them lived there from 1973 through the years in issue. During this period petitioner had bank accounts in Florida and was registered to vote there. Prior to 1973, petitioner had lived in New Orleans, Louisiana, and Picayune, Mississippi. Seco and the Angolan government would not permit petitioner's wife to live in the compound or to visit Angola and petitioner never considered moving his wife to any foreign country. Petitioner received wages from Seco and claimed a foreign earned income exclusion under section 911(a)(1) pursuant to the "bona fide resident" test of section 911(d)(1)(A) [3] for the years and in the amounts set forth below: Foreign Earned
Taxable Year
Wages
Income Exclusion
1982
$ 27,675.00
$ 27,000.00
1983
$ 47,645.00
$ 47,645.00
1984
$ 51,000.00
$ 51,000.00
1985
$ 55,540.00
$ 55,540.00
*300 OPINION Section 911(a)(1) permits certain qualified individuals to elect to exclude foreign earned income from their gross income. To qualify for the exclusion the taxpayer is required by section 911(d)(1) to be: an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. Petitioner concedes that he does not meet the "physical presence test" of section 911(d)(1)(B). Therefore, to qualify for the exclusion petitioner must prove that during each of the years in dispute his "tax home" was in Angola and that he was a "bona fide resident" *301 of Angola "for an uninterrupted period which includes an entire taxable year." Section 911(d)(1)(A). "Tax home" is defined in section 911(d)(3) as being: such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States. Respondent concedes that for purposes of section 162(a)(2) petitioner's tax home was in Angola, the principal place of his employment. Nevertheless under section 911(a) petitioner must still establish that his "abode" was not in the United States. With regard to abode section 1.911-2(b), Income Tax Regs., states: Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean that the individual's abode is in the United States. In Bujol v. Commissioner,T.C. Memo. 1987-230, affd. without published *302 opinion 842 F.2d 328 (5th Cir. 1988), we considered the meaning of the word "abode" as used in section 911(d)(3) and stated: "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [Footnote ref. omitted.] [4]
During the years 1982 through 1985 petitioner obviously maintained significant ties to the United States. At the beginning of each off-duty period he immediately returned to the residence in Panama City which his wife had inherited in 1973 and which had been their home prior to his employment in Angola. During these periods he frequently traveled to Oklahoma to care for his father. Consequently *303 during 1982 through 1985 he spent about 40% of his time either in Panama City or in Oklahoma. Furthermore throughout these years petitioner also maintained a bank account in Panama City and was registered to vote there. By contrast, during these years petitioner had only minimal contact with Angola. His on-duty periods were spent in the isolated Angolan compound which was surrounded by security fences and land mines. He was required to remain in the compound night and day during the on-duty periods with the exception of infrequent occasions when for short periods he was permitted to leave the compound in order to assist local government officials with mechanical problems. We conclude, therefore, that petitioner's abode remained in the United States during 1982 through 1985 and consequently he does not qualify for the earned income exclusion provided by section 911. Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. All references to petitioner in the singular are to Chesley James. ↩
3. Petitioner concedes that he does not qualify for a foreign earned income exclusion during the years at issue under the provisions of section 911(d)(1)(B) due to the failure to meet the "physical presence test." ↩
4. See also Lemay v. Commissioner,837 F.2d 681 (5th Cir. 1988), affg. T.C. Memo. 1987-256; Bassett v. Commissioner,T.C. Memo 1988-218↩.