JAMES H. CAMERON, pro se AND THERESA D. CAMERON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cameron v. Commissioner
Docket No. 10708-87
United States Tax Court
T.C. Memo 1988-496; 1988 Tax Ct. Memo LEXIS 525; 56 T.C.M. (CCH) 496; T.C.M. (RIA) 88496; October 13, 1988
*525 Petitioner was employed as a tool pusher on a mobile rig off the coast of England in the North Sea during 1982, 1983, and 1984. Petitioner's work schedule consisted of a 28-day work period followed by a 28-day rest period. The entire work period was spent on the rig, and the rest period was spent either at this residence in Milton, Florida, or in transit to or from the rig. Petitioner was required by his employer to maintain a residence in the United States, wherein petitioner's wife and their children resided during the years in issue. Held: Petitioner is not a qualified individual eligible to exclude foreign-earned income from his gross income under section 911(a), Internal Revenue Code of 1954. James H. Cameron, pro se. [1]
David G. Henricks, for the respondent. WHITAKER
*526 MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: In a notice of deficiency dated January 28, 1987, respondent determined deficiencies in petitioner's Federal income tax for the years and in the amounts as follows: Year
Amount
1982
$  18,250.15
1983
10,375.82
1984
9,604.81
*527 The issue for decision is whether James H. Cameron qualifies for the foreign-earned income exclusion under section 911[2] during the years in issue. FINDINGS OF FACT Some of the facts have been stipulated, and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. James H. Cameron (hereinafter individually referred to as Mr. Cameron or petitioner) and Theresa D. Cameron resided in Pace, Florida, at the time they filed their petition herein. They were divorced after their petition was filed but before the Tax Court trial was held. For the years in issue, petitioners filed joint Federal income tax returns. Petitioner worked for Penrod Drilling Co. (Penrod) of Dallas, Texas, as a tool pusher [3] during 1982, 1983, and 1984. Beginning in September 1982, petitioner worked on a mobile rig off the coast of England in the North Sea. He continued working on this mobile rig during 1983 and 1984. Due to working overseas, petitioner received a 25-percent bonus over the wages he would have received had he worked *528 on a site in the continental United States. Petitioner's schedule required him to alternate 28-day periods of work on the rig and of rest. Petitioner spent 77, 208, and 192 days outside of the United States in 1982, 1983, and 1984, respectively. Petitioner was not present in any foreign country or countries for 330 days out of any 12-month period encompassing any portion of the taxable years 1982, 1983, and 1984. Penrod provided petitioner with food and living quarters on the drilling rig during this work periods. Penrod policy prohibited petitioner from living ashore in England during either his work period or rest period. Additionally, petitioner's wife and children were prohibited from living ashore in England or aboard the rig at anytime. Petitioner did not maintain a bank account and was not licensed to drive to England. Penrod required petitioner to maintain a residence in the United States and to travel directly between his residence *529 and the rig. In compliance with this requirement, petitioner maintained a residence in Milton, Florida, during the years in issue. Petitioner's wife, who is a nurse, and children lived in the Florida residence throughout the years in issue. At all times during 1982, 1983, and 1984, petitioner maintained bank accounts in Milton, Florida, and possessed a Florida State driver's license. He was also registered to vote in Milton, Florida. In addition, petitioners owned or operated a rental trailer or trailer home in Florida during the years in issue. The rental trailer was located in Fort Myers, Florida, during 1982 and 1983; the trailer home was in Midway, Florida, in 1984. Petitioner visited his family in Milton, Florida, during every rest period of his employment schedule at the rig off the coast of England. Penrod made the transportation arrangements and paid the cost of the transportation between petitioner's home and the drilling site. In each of the years in issue, petitioner paid taxes to England with respect to his Penrod wages. He claimed a foreign tax credit on his Federal income tax return for each of the years in question. On his Federal income tax returns for the *530 years in issue, petitioner reported earnings from Penrod and deductions or "exclusions" of foreign-earned income in the following amounts: Year
Earnings
Exclusion
1982
$ 16,337.70
[4] $ 15,750.00
1983
52,498.19
44,800.00
1984
54,779.44
41,600.00
Respondent's notice of deficiency disallowed the foreign income exclusion in each of the years at issue. OPINION An individual qualifies under section 911, as in effect in 1982, 1983, and 1984, for the foreign-earned income exclusion when the individual has a tax home in a foreign country and is either a bona fide resident in a foreign country or physically present in a foreign country for at least 330 full days during any period of 12 consecutive months. Sec. 911(d)(1)(A)-(B). The central issue in this case is whether petitioner had a "tax home" in a foreign country. [5] A "tax home" is defined in section 911(d) as follows: (3) Tax home. -- The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated *531 as having a tax home in a foreign country for any period for which his abode is within the United States. [Emphasis added.] *532 See sec. 1.911-2(b), Income Tax Reg.
The instant case is controlled by recent decisions of this Court, including Bujol v. Commissioner,T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988), and LeMay v. Commissioner,T.C. Memo. 1987-256, affd. 837 F.2d 681 (5th Cir. 1988). In Bujol and LeMay, the taxpayers were employed on off-shore drilling rigs located in territorial waters of a foreign country. Each taxpayer worked a 28-day period followed by 28 days spend off-duty with his family at his residence in the United States. The taxpayers were required to live on premises provided by their respective employer and had little contact with foreign nationals. In Bujol and LeMay, we concluded that the taxpayer's abode, which was at a location where the taxpayer had strong economic, family, and personal ties, was within the United States. The facts in the instant case are not distinguishable from those in Bujol and LeMay. See Miller v. Commissioner,T.C. Memo. 1988-397. Therefore, we find that petitioner's tax abode remained in the United States during the *533 years in issue. Sec. 911(d)(1). Accordingly, we hold that petitioner was not entitled to exclude any of his foreign-earned income from United States taxation for the years 1982, 1983, and 1984. Sec. 911(a). Decision will be entered for the respondent.
Footnotes
1. In a statement filed during the Tax Court trial on February 1, 1988, Theresa D. Cameron indicated that she would acquiesce to whatever was presented by James H. Cameron. ↩
2. All section references are to the Internal Revenue Code as amended and in effect during the years in issue. ↩
3. Although Mr. Cameron testified that he worked for Penrod as a tool pusher, the parties stipulated that he worked as an oil rig driller. The record does not indicate the difference between the duties of a driller and a tool pusher. ↩
4. This exclusion was claimed on an amended 1982 return. ↩
5. The record in the instant case was held open to allow petitioner to submit documentation in support of his contention that he is entitled to the foreign-earned income exclusion. On March 8, 1988, petitioner submitted a document, which was marked as petitioners' Exhibit 8 and was made part of the record. The document is page 27 of a pamphlet or booklet, presumably printed by the Internal Revenue Service. The document includes a section labeled "Meeting the Requirements of Either the Bona Fide Residence Test or the Physical Residence Test." However, the document does not support petitioner's contention that he is entitled to a section 911 exclusion because the determinative issue in this case is whether petitioner's tax home is in a foreign country, not whether petitioner satisfies the bona fide residence test or the physical residence test. Regardless, the authoritative sources of Federal tax law are the statutes, regulations, and case law, but not informal publications. Zimmerman v. Commissioner,71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979). Informal publications are issued for assistance to taxpayers and Internal Revenue Service employees. Brobst v. Commissioner,T.C. Memo. 1988-456↩.