WILLIAM HENRY BOSARGE AND MARILYN J. BOSARGE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bosarge v. Comm'r
Docket No. 15466-86. United States Tax Court
T.C. Memo 1989-15; 1989 Tax Ct. Memo LEXIS 15; 56 T.C.M. (CCH) 1043; T.C.M. (RIA) 89015; January 10, 1989. William Henry Bosarge, pro se. J. Craig Young, for respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in and additions to petitioners' income taxes as follows: Additions to Tax [1]
Section
Section
Year
Deficiency
6653(a)(1)
6653(a)(2)
1982
$ 10,956.49
$  --
$  --
1983
$ 10,764.00
$ 538.20
50 percent of the
interest due on
$ 10,764.00
*17 After concessions, the only issue for decision is whether petitioner William Henry Bosarge (hereinafter referred to as petitioner in the singular) was a qualified individual under section 911(a) during the years at issue for purposes of the foreign earned income exclusion. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits associated therewith are incorporated herein by reference. Petitioners resided in Grand Bay, Alabama at the time of filing their petition. They filed joint federal income tax returns for 1982 and 1983 and an amended return for 1982 with the Internal Revenue Service Center in Philadelphia, Pennsylvania. Petitioner was employed by Western Oceanic International ("Western") as a crane operator on an offshore drilling rig located in foreign territorial waters from 1975 through 1984. . During the years at issue (1982 and 1983) the rig was located in the territorial waters of Indonesia, Thailand and Cameroon for the following periods: From
To
Location
January 1982
February 1982
Indonesia
March 1982
August 1982
Thailand
September 1982
December 1983
Cameroon
When the *18 rig was moved from one location to another, whether within the territorial waters of the same country or to those of another country, petitioner continued working on the rig at the new location. Petitioner preferred assignment to an overseas rig in order to receive substantial bonuses. Petitioner's work schedule generally consisted of alternate work and rest periods of approximately 28 days each although some work periods lasted for more than 28 days. During work periods, petitioner lived and worked on his assigned rig, and was provided with food, lodging and laundry at Western's expense. The only time he spent on the mainland of Indonesia, Thailand or Cameroon was during layovers while en route to or from his assigned rig. Petitioner had a one night layover each time he flew into Jakarta, Indonesia and Bangkok, Thailand. When petitioner worked in Cameroon he went directly to the rig, but upon leaving he had a one day layover in Douala. On each layover, Western paid for his lodging and meals. At the end of each work period, petitioner immediately returned to his home and family in Alabama and remained there throughout the rest period. Western provided petitioner with roundtrip *19 airline tickets between Alabama and the nearest airport to his assigned rig. At the beginning of 1982, petitioner and his wife owned a home in Bayou la Batre, Alabama. During 1982 or 1983, they sold this home and purchased a new home in Grand Bay, Alabama. Petitioner's wife and children lived in these homes throughout 1982 and 1983. Both petitioners have lived in Alabama since childhood and throughout their twenty-eight year marriage. They also have numerous friends and relatives living in Alabama. During 1982 and 1983, petitioner had bank accounts in Alabama, was registered to vote there and had an Alabama driver's license. Petitioner had no desire to visit any of the foreign countries in the territorial waters of which his assigned rig was located nor did he consider moving his family to any of the foreign countries. His presence in their territorial waters during 1982 and 1983 was due entirely to his employment. Petitioner did not pay income taxes to any foreign country during 1982 and 1983 although Western may have paid an undetermined amount on petitioner's behalf. Petitioner received wages from Western and claimed a foreign earned income exclusion under section 911(a)(1) *20 pursuant to the "bona fide resident" test under section 911(d)(1)(A) for the years and in the amounts set forth below: Foreign Earned
Taxable Year
Wages
Income Exclusion
1982
$ 54,919.88
$ 40,500.00
1983
$ 49,072.80
$ 45,368.00
Petitioner concedes that he does not qualify for a foreign earned income exclusion under section 911(d)(1)(B) because he fails to meet the "physical presence test." OPINION Section 911(a)(1) permits qualified individuals to elect to exclude foreign earned income from their gross income. To qualify a taxpayer is required by section 911(d)(1) to be: * * * an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such *21 period. Since petitioner concedes in this case that he does not meet the physical presence test of section 911(d)(1)(B) he must prove in order to qualify for the exclusion that during each of the years 1982 and 1983 his tax home was in a foreign country and that he was a "bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year." Section 911(d)(1)(A). Tax home is defined in section 911(d)(3) as being: * * * such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States. Respondent concedes that for purposes of section 162(a)(2) petitioner's tax home in 1982 and 1983 was in Indonesia, Thailand or Cameroon, the principal place of his employment. Nevertheless under section 911(a) petitioner must still establish that his "abode" was not in the United *22 States. With regard to the meaning of abode, section 1.911-2(b), Income Tax Regs., states: * * * Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean that the individual's abode is in the United States. In Bujol v. Commissioner,T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988), we considered the meaning of the word "abode" as used in section 911(d)(3) and stated: "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus "abode" has a domestic rather than vocational meaning, and stands in *23 contrast to "tax home" as defined for purposes of section 162(a)(2). [Footnote ref. omitted.] [2]
During the years in issue petitioner obviously maintained significant ties to the United States. At the beginning of each rest period he immediately returned to Alabama where his family resided in the residences purchased by petitioner. Consequently during the years in issue he spent about 50 percent of his time with his family in Alabama. Furthermore throughout these years petitioner also had bank accounts in Alabama, had an Alabama driver's license and was registered to vote there. By contrast, during these years petitioner had only minimal contact with Indonesia, Thailand, or Cameroon. His work periods were spent on the offshore rig and his only contact with the mainland was during layovers of up to one night en route to or from Alabama on each of his rest periods. We conclude, therefore, that petitioner's abode remained in the United States during the periods in issue and consequently *24 he does not qualify for the earned income exclusion provided by section 911. Due to concessions, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue unless otherwise indicated.↩
2. See also LeMay v. Commissioner,837 F.2d 681 (5th Cir. 1988), affg. T.C. Memo. 1987-256; Bassett v. Commissioner,T.C. Memo. 1988-218↩.