JOHN AND JOHNNIE M. EUBANKS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eubanks v. Commissioner
Docket Nos. 12900-87, 5286-88.
United States Tax Court
T.C. Memo 1989-233; 1989 Tax Ct. Memo LEXIS 233; 57 T.C.M. (CCH) 391; T.C.M. (RIA) 89233; May 11, 1989. John and Johnnie M. Eubanks, pro se. J. Craig Young, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax and additions to tax for the calendar years 1983 and 1984 as follows: Additions to Tax, Sections
Year
Deficiency
6653(a)(1) [1]
6653(a)(2)
6661
1983
$ 12,590.00
$ 629.50
*
$ 3,147.50
1984
8,803.59
440.18
*
2,200.89
*235 Some of the issues raised by the pleadings were disposed of by agreement of the parties, leaving for decision whether petitioner, John Eubanks, is a "qualified individual," within the meaning of section 911(d)(1) and entitled to the foreign earned income exclusion provided for in section 911(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, whose legal residence was in Hattiesburg, Mississippi, at the time of the filing of the petition in this case, filed joint Federal income tax returns for the calendar years 1983 and 1984 with the Internal Revenue Service Center, Philadelphia, Pennsylvania. During the years at issue, and for several years prior thereto, John Eubanks (Mr. Eubanks) was employed by Sedco, Inc. (Sedco) on an offshore oil rig. Prior to 1979, the oil rig was located in the Gulf of Mexico. However, in 1979, Sedco moved the offshore rig to a location within the territorial waters of Nigeria. When Sedco moved the oil rig, Mr. Eubanks was given the opportunity to leave his United States assignment and follow the rig to the territorial waters of Nigeria. Because an overseas assignment in a hardship *236 country, such as Nigeria, carried with it a substantial raise in pay, a possible promotion, and contract and hardship bonuses, he accepted the position. During 1983 and 1984, Mr. Eubanks was employed as a mechanic on the rig. During his tenure on the rig, Mr. Eubanks' work schedule consisted of alternate work and rest periods of 28 days each. He spent the entirety of each work period on the rig where he was provided with food and lodging at Sedco's expense. Mr. Eubanks did not establish a household on the mainland of Nigeria even though he was not prohibited from doing so by his employer or the government of Nigeria. At the end of each work period, Sedco provided him with a round-trip ticket back to the United States. Mr. Eubanks returned to the United States at the end of every work period. During 1983, Mr. Eubanks and his family maintained a household in Laurel, Mississippi. During 1984, he and his family bought a house in Hattiesburg, Mississippi and maintained a household there. They continued to own the house in Laurel. After viewing the living conditions in the mainland of Nigeria, Mr. Eubanks declined to move his family there. His family remained in Mississippi *237 during the entire period Mr. Eubanks was working in Nigeria. During the years in issue, Mr. Eubanks possessed a Mississippi driver's license, belonged to a Mississippi church, and maintained bank accounts in Mississippi. His mail was delivered to his residence in Mississippi. His father, brother, and sister also resided in Laurel, Mississippi. During 1983 and 1984, Mr. Eubanks spent 24 days of each 28- day rest period with his family, either in Laurel, Mississippi or Hattiesburg, Mississippi. He spent four days of each 28-day rest period in transit between Nigeria and Mississippi. His only contact with the mainland of Nigeria was during these transit periods. In order to work within the territorial waters of Nigeria, Mr. Eubanks was required to, and did, obtain a Nigerian residency permit. The only reason he obtained the permit was so that he could work on the offshore rig. Sedco paid Nigerian income taxes in the amount of $ 6,549.66 on behalf of Mr. Eubanks in 1983. Sedco paid Nigerian income taxes in the amount of $ 4,337.93 on behalf of Mr. Eubanks in 1984. Petitioner was not physically present in Nigeria for at least 330 full days during any 12 consecutive months that *238 began or ended during the taxable years 1983 or 1984. In 1983, Mr. Eubanks received total wages in the amount of $ 68,764.32 from Sedco. Petitioners reported this amount on their 1983 U.S. income tax return. The figure includes the amount of Nigerian income taxes paid by Sedco on Mr. Eubanks' behalf in 1983. On their 1983 return, petitioners claimed a foreign income exclusion under section 911(a)(1) in the amount of $ 48,800. In 1984, Mr. Eubanks received total wages in the amount of $ 68,088.32 from Sedco. Petitioners reported this amount on their 1984 U.S. income tax return. Again, the amount reported as wages includes the amount of Nigerian income taxes paid by Sedco on Mr. Eubanks' behalf in 1984. Petitioners claimed a foreign income exclusion for 1984 in the amount of $ 48,800. In the notice of deficiency for petitioners' 1983 tax year, which is dated March 17, 1987, respondent determined, among other adjustments, that petitioners were not entitled to a foreign earned income exclusion under section 911(a)(1). Respondent also determined that petitioners were liable for additions to tax under section 6653(a)(1), section 6653(a)(2), and section 6661, but these additions *239 to taxes were conceded by respondent at trial. In his notice of deficiency for petitioners' 1984 tax year, which is dated December 21, 1987, respondent determined, among other adjustments, that petitioners were not entitled to the foreign earned income exclusion under section 911(a)(1). Respondent also determined that petitioners were liable for additions to tax under section 6653(a)(1), section 6653(a)(2), and section 6661, but conceded these additions to tax at trial. OPINION Section 911(a) permits a "qualified individual," at his or her election, to exclude from gross income his or her "foreign earned income." The income so excluded is completely exempt from Federal income tax. Section 911(a). Section 911(b)(1) provides that, for purposes of section 911, the term "foreign earned income" means the amount received by an individual from sources within a foreign country which constitutes earned income "attributable to services performed by such individual during the period described in subparagraph (A) or (B) of subsection (d)(1), whichever is applicable." Section 911(d)(1) provides that, for purposes of section 911: (1) QUALIFIED INDIVIDUAL. -- The term "qualified individual" *240 means an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. The parties have stipulated that Mr. Eubanks, a citizen of the United States, was not physically present in Nigeria for at least 330 full days during any period of 12 consecutive months which began or ended during the taxable years 1983 or 1984. Thus, in order for Mr. Eubanks to be considered a "qualified individual," entitled to take advantage of the foreign earned income exclusion under section 911(a)(1), petitioners must show that Mr. Eubanks' "tax home" was located in Nigeria during the years at issue and that he was a bona fide resident of Nigeria. Section 911(d)(3) provides, in part, that the term "tax home" means, with respect to any individual, "such individual's home for purposes *241 of section 162(a)(2) (relating to traveling expenses while away from home)." Section 911(d)(3) specifically provides that an individual is not to be treated as having a tax home in a foreign country for any period for which he has an abode in the United States. See also section 1.911-2(b), Income Tax Regs. We conclude that Mr. Eubanks maintained an abode within the United States during the years at issue and, therefore, he is not a "qualified individual" within the meaning of section 911(d)(1). Thus, we need not address the issue of bona fide residency. The facts of the instant case closely resemble those in Lemay v. Commissioner,837 F.2d 681 (5th Cir. 1988), affg. a Memorandum Opinion of this Court. In Lemay v. Commissioner, supra, the taxpayer was employed on an offshore rig located in the territorial waters of Tunisia. His employer paid all of his food and lodging expenses while he was on the rig. The taxpayer spent all of his work periods on the rig (except for occasional trips to his employer's headquarters on the Tunisian mainland). His employer paid the Tunisian government all taxes relating to his earnings from his employment in Tunisia. *242 The taxpayer worked a 28/28 schedule and returned to the United States at the beginning of each rest period. His employer provided round-trip air fare between Tunisia and the United States. The taxpayer spent each rest period with his family at their house in Lake Charles, Louisiana. The taxpayer was registered to vote in Louisiana, maintained bank accounts in Louisiana, and possessed a Louisiana state driver's license. In reaching its decision in Lemay v. Commissioner, supra, the Fifth Circuit Court of Appeals quoted from our opinion in Bujol v. Commissioner,T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988): "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2) * * * [Fn. ref. omitted.] Lemay v. Commissioner, supra at 683 *243 (quoting Bujol v. Commissioner, supra, 53 T.C.M. 762, at 763-764, 56 P-H Memo T.C. par. 87,230 at 1112-87). Based on this language and the aforementioned facts, the Fifth Circuit upheld our conclusion that the taxpayer had significant economic, familial, and personal ties to his residence in Louisiana and, therefore, his abode remained in the United States during the year at issue. Thus, the taxpayer was not a "qualified individual" under section 911(d)(1) and was not entitled to exclude a portion of his Tunisian wages from income under section 911(a)(1). We detect no significant factual distinctions in the instant case which would justify a different result from that reached in Lemay v. Commissioner, supra. Mr. Eubanks did not merely maintain a house or houses in the United States. He retained significant economic, familial, and personal ties to his residences in Mississippi. He returned to his residence during every rest period to be with his family who had remained in Mississippi. He received his mail in Mississippi. He maintained bank accounts in Mississippi. He belonged to a church in Mississippi. He had a Mississippi state driver's *244 license. In contrast, Mr. Eubanks' ties with Nigeria were merely transitory. He did not move his family to Nigeria or maintain a household there, even though he was not prohibited from doing so by his employer or the government of Nigeria. He did not attempt to make friends in Nigeria, open bank accounts in Nigeria, obtain a Nigerian driver's license, or otherwise integrate himself into Nigerian society. Thus, it is apparent that Mr. Eubanks had no intention whatsoever of building permanent ties with Nigeria. Instead, Mr. Eubanks intended to maintain, and did maintain, significant and permanent ties to Mississippi. In sum, we conclude that Mr. Eubanks maintained an abode in the United States during the years at issue and, therefore, his tax home, as defined in section 911(d)(3), was not in Nigeria. In view of this conclusion, Mr. Eubanks was not a qualified individual within the meaning of section 911(d)(1) during 1983 and 1984 and petitioners are not entitled to exclude from gross income any portion of his wages under section 911(a)(1). Decisions will be entered under Rule 155.
Footnotes
1. Except as otherwise provided, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here at issue.↩
*. Amount due equals 50 percent of the interest on the deficiency. ↩