HUGH J. BILLEAUD and BEVERLY P. BILLEAUD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Billeaud v. Commissioner
Docket No. 12436-86
United States Tax Court
T.C. Memo 1990-59; 1990 Tax Ct. Memo LEXIS 59; 58 T.C.M. (CCH) 1348; T.C.M. (RIA) 90059; February 8, 1990
Robert M. Bandy, for the petitioners. Arlene A. Blume, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined deficiencies in petitioners' income tax for tax years *61 1982 and 1983 in the amounts of $ 16,234 and $ 16,440, respectively. After concession the issue for decision is whether Hugh J. Billeaud is a "qualified individual" eligible for the foreign earned income exclusion under section 911(a). [1] Resolution of this issue requires our determining whether Mr. Billeaud is entitled to the waiver of the requirements of section 911(d)(1) as afforded under section 911(d)(4). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Hugh J. (petitioner) and Beverly P. Billeaud, husband and wife, resided in Lafayette, Louisiana, when they filed the petition herein. During the years in issue, petitioner was employed by Directional Enterprises, Inc. (Directional) which was under contract with Cabinda Gulf Oil Company (Cabinda Gulf) to provide technical assistance and advice in connection with Cabinda Gulf's oil and gas exploration in Cabinda, *62 Angola. For the first several months of 1982, petitioner worked at Cabinda Gulf's Malongo Camp as a directional drilling consultant; thereafter, he became the base supervisor of directional drilling operations. Malongo Camp covers approximately 4,000 acres and is inhabitated by approximately 300 persons of various nationalities. It is located approximately 20 miles from Cabinda City, the capital of the Province of Cabinda. As a result of fighting and civil unrest in the region, the camp is guarded by soldiers and is surrounded by mine fields. Petitioner was employed on a rotational schedule comprised of work periods of 28 days followed by rest periods of 28 days. While at the Malongo camp, he received free lodging, food, laundry services, and medical treatment. At the camp, petitioner occupied one unit of a four unit bungalow. Each unit of the bungalow contained two bedrooms and a bath. Petitioner lived in one of the bedrooms, a co-worker occupied the other. During petitioner's 28-day off-duty period, his bedroom was occupied by his replacement. Because of the adverse conditions which existed in Angola, petitioner was not permitted access to parts of the country outside *63 the camp compound. Thus, petitioner's sole contact with Angola was going to the camp from the Luanda airport and back (Luanda is the capital of Angola). Except for a few occasions, upon completion of each 28-day work period, petitioner would return to Louisiana where his wife and daughter resided. Petitioner's travel between Angola and Louisiana and back was arranged and paid for by Directional. Travel between Luanda airport and Malongo Camp was paid for by Cabinda Gulf. During both years in issue, petitioner had numerous Louisiana connections. He was a registered Louisiana voter. His house and automobile were located in Louisiana. And he maintained a Louisiana driver's license as well as a Louisiana bank account. Petitioner received the following wages from Directional and claimed entitlement to the following exclusions for foreign earned income: Year
Amount of Earnings
Amount of Exclusion
1982
$ 73,704
$ 37,500
1983
72,712
43,200
Respondent disallowed the claimed foreign earned income exclusion on the basis that petitioner was not a qualified individual within the meaning of section 911(d)(1). Petitioner was not present in Angola, *64 or any other foreign country, for an uninterrupted period which included an entire taxable year or for 330 days out of any 12 consecutive month period encompassing any portion of 1982 or 1983. Thus, he acknowledges that he did not meet the requirements of the foreign residence or physical presence test of section 911(d)(1). On March 20, 1981, the Secretary of the Treasury issued a list of countries which he determined qualified under section 911(d)(4)(B) for the waiver of the requirements of section 911(d)(1). Rev. Proc. 81-23, 1981-1 C.B. 693. Angola was not one of the countries listed. Rev. Proc. 81-23 was updated in 1986 by Rev. Proc. 86-39, 1986-2 C.B. 701, but again Angola was not included as a country which qualified for the section 911(d)(4) waiver. On November 21, 1985, petitioner wrote both the United States Secretary of State and Secretary of the Treasury requesting that Angola be added to the list of countries qualifying for the waiver under section 911(d)(4). Such request was denied. On April 4, 1986, petitioner's counsel wrote to the Assistant Secretary of Treasury (Tax Policy) making a similar request; that request was also *65 denied. Petitioner contends that the Secretary of the Treasury's refusal to add Angola to the list qualifying for the waiver under section 911(d)(4) was arbitrary and unreasonable and amounts to a denial of his substantive due process rights under the Fifth Amendment to the Constitution. He argues that the conditions and circumstances which existed in Angola are indistinguishable from those which existed in those countries which the Secretary determined qualified for the waiver under section 911(d)(4). OPINION Section 911(a) permits certain qualified individuals to exclude foreign earned income from their gross income. Section 911(d)(1) defines a "qualified individual" as: an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. Thus, pursuant *66 to section 911(d)(1), a qualified individual definitionally must satisfy a tax home requirement and either a bona fide foreign residence requirement (the foreign residence test) or a physical presence requirement (the physical presence test). However, pursuant to section 911(d)(4), a waiver of the section 911(d)(1) "qualified individual" requirements is given to an individual who but for certain circumstances (as set forth in section 911(d)(4)(B)(i)) could have satisfied such requirements. Section 911(d)(4) provides: (4) WAIVER OF PERIOD OF STAY IN FOREIGN COUNTRY. - - Notwithstanding paragraph (1), an individual who -- (A) is a bona fide resident of, or is present in, a foreign country for any period, (B) leaves such foreign country after August 31, 1978 -- (i) during any period during which the Secretary determines, after consultation with the Secretary of State or his delegate, that individuals were required to leave such foreign country because of war, civil unrest, or similar adverse conditions in such foreign country which precluded the normal conduct of business by such individuals, and (ii) before meeting the requirements of such paragraph (1), and (C) establishes *67 to the satisfaction of the Secretary that such individual could reasonably have been expected to have met such requirements but for the conditions referred to in clause (i) of subparagraph (B), shall be treated as a qualified individual with respect to the period described in subparagraph (A) during which he was a bona fide resident of, or was present in, the foreign country, and in applying subsections (b)(2)(A) and (c)(1)(B)(ii) with respect to such individual, only the days within such period shall be taken into account. Petitioner concedes that he does not meet either the foreign residence test or the physical presence test of section 911(d)(1). He claims that the civil and political strife existing in Angola prevented him from satisfying these requirements; accordingly, he claims entitlement to the waiver permitted under section 911(d)(4). We disagree. Petitioner has not proven that his tax home (as defined in section 911(d)(3)) was in Angola during any of the periods in which he earned the income he seeks to exclude. Thus, leaving aside his constitutional arguments, petitioner has not established that it was reasonable to expect that he would have met the requirements *68 of paragraph (1) of section 911(d) but for the conditions referred to in section 911(d)(4)(B)(i). See section 911(d)(4)(C). The "but for" phrase of subparagraph (C) of section 911(d)(4) imposes a requirement of immediate and direct causation. Harrington v. Commissioner, 93 T.C. 297, 312 (1989). In the instant case, we are unpersuaded that war, civil unrest or similar adverse conditions caused petitioner's failure to meet the section 911(d)(1) requirements. Rather, in our opinion, petitioner left Angola after each 28 day work period to be with his family in Louisiana. Pursuant to section 911(d)(3), the term "tax home" has the same meaning as a taxpayer's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home), except that if a taxpayer's abode is within the United States, then the taxpayer is treated as not having a tax home in a foreign country. Section 911(d)(3). Section 1.911-2(b), Income Tax Regs., provides: (b) Tax home * * * an individual's tax home is considered to be located at his regular or principal (if more than one regular) place of business or, if the individual has no regular or principal place of *69 business because of the nature of the business, then at his regular place of abode in a real and substantial sense. An individual shall not, however, be considered to have a tax home in a foreign country for any period for which the individual's abode is in the United States. Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean the individual's abode is in the United States. In recent cases [2] addressing the meaning of the word "abode," we stated: "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [Footnote ref. omitted. Bujol v. Commissioner, T.C. Memo. 1987-230, 53 TCM 762, 763-764, 56 P-H Memo T.C. par. 87,230 at 87-1112, *70 affd. without published opinion 842 F.2d 328 (5th Cir. 1988).] Here, petitioner maintained strong economic, familial and personal ties to the United States, as demonstrated by his maintaining: a home in Louisiana; voting registration in Louisiana; a United States driver's license; and an account at a United States bank. Furthermore, petitioner returned to his residence in Louisiana during each off duty period. By contrast, petitioner's ties with Angola were transitory. Thus, we find that during both years in issue petitioner's abode was in the United States and not in Angola. Moreover, we are unpersuaded that petitioner reasonably could have met the tax home requirement but for the conditions in Angola. Congress enacted section 911(d)(4) in order to address a specific problem which arose in 1980 when United States citizens residing in Iran were suddenly and unexpectedly forced to leave the country before *71 meeting the qualified individual requirements of section 911(d)(1) due to extraordinary circumstances beyond their control. S. Rept. 96-1031, 1980-2 C.B. 730, 732. That problem was not present in this case. Our comments concerning the taxpayer in Harrington v. Commissioner, 93 T.C. at 314-315, are apropos to petitioner. Petitioner was aware of the conditions existing in Angola prior to his return to the country to complete each 28 day work period. Given the continual unrest in the country, it was not reasonable for him to harbor an expectation that he would be able to satisfy the requirements of section 911(d)(1). In our opinion, Congress did not intend the waiver provisions of section 911(d)(4) to be available to a taxpayer who begins employment in an already unstable foreign country when there was never the slightest chance he could satisfy the "qualified individual" requirements of section 911(d)(1). Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded.↩
2. Bujol v. Commissioner, T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988). See also Lemay v. Commissioner, 837 F.2d 681 (5th Cir. 1988), affg. T.C. Memo. 1987-256↩.