WILLIAM R. AND GERTRUDE L. WILSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilson v. Commissioner
Docket No. 13809-89
United States Tax Court
T.C. Memo 1991-491; 1991 Tax Ct. Memo LEXIS 540; 62 T.C.M. (CCH) 900; T.C.M. (RIA) 91491; September 30, 1991, Filed *540 Decision will be entered for the respondent for the deficiency and for the petitioners for the additions to tax. William R. Wilson, pro se. David R. Reid, for the respondent. HAMBLEN, Judge. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in William R. and Gertrude L. Wilson's (petitioners) Federal income tax for the taxable year 1986 in the amount of $ 10,900.92 and additions to tax under section 6653(a)(1)(A) [1] and (B).[2]
The sole issue for decision is whether William R. Wilson (petitioner) is a "qualified individual" eligible to exclude foreign earned income from his 1986 gross income under section 911(a). FINDINGS OF FACT Some of the facts have been stipulated and *541 are found accordingly. The stipulation of facts and exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Blairsville, Georgia, at the time they filed their petition in this case. Petitioners were U.S. citizens at all times during 1986. Petitioner has been employed on offshore oil rigs since 1983. During the taxable year 1986, petitioner worked on an offshore oil drilling rig located 80 miles off the coast of Brazil. Petitioner's work schedule on the rig generally consisted of alternate work and rest periods of 28 days each. Petitioner spent a total of 208 days on the oil rig during 1986. During his work periods, petitioner lived and worked on the oil rig. His employer provided food, lodging, and medical facilities aboard the oil rig. While on the oil rig, petitioner left his personal possessions, including clothes, guns, and sporting equipment, at his home in Georgia. Upon completion of his 28-day work periods, petitioner immediately returned to Blairsville, Georgia. Petitioners had strong familial and personal ties to Georgia. Petitioners' family has resided in their home in Blairsville, Georgia, since 1980. During the taxable *542 year 1986, petitioner was registered to vote in Georgia, and maintained a Georgia State driver's licence. In addition, petitioners maintained a joint bank account in Georgia, had a number of motor vehicles registered in Georgia, and had credit cards issued by institutions in the United States. Petitioner's wife resided in Blairsville, Georgia, at all times during 1986. For a number of reasons, including the company policy of petitioner's employer, petitioner's wife could not reside on the oil rig during petitioner's 28-day work periods. Petitioner had only transitory contacts with Brazil. Petitioner was not a bona fide resident of Brazil at any time during 1986. Petitioner maintained no accounts with any bank, savings and loan, or credit union in Brazil. Moreover, with the exception of attending oil rig manager meetings the day prior to reporting on the oil rig and the day departing the oil rig, petitioner did not spend any off-duty time in Brazil other than in transit to his home in the United States. Petitioners did not file an income tax return with the Government of Brazil during the taxable year 1986. Petitioners excluded $ 44,634.85 as foreign earned income on their *543 1986 joint Federal income tax return. OPINION Respondent determined that petitioner was not a "qualified individual" under section 911(a). In making his determination, respondent relies on two grounds. First, respondent asserts that petitioner maintained an abode in the United States at all times during 1986. Second, respondent asserts that petitioner did not meet either the bona fide residence test or the physical presence test required by section 911(d)(1). Petitioners contend that Brazil qualified as their tax home. Petitioners further contend that they have satisfied the physical presence test by applying the waiver of time requirement under section 911(d)(4). Finally, petitioners argue that respondent should be estopped from determining a deficiency for the taxable year in question. Petitioners base their argument on the fact that respondent issued an erroneous refund based on petitioners' 1986 Federal income tax return which included a schedule showing that petitioner spent only 208 days off the coast of Brazil. We conclude that petitioners maintained an abode in the United States at all times during 1986. Under section 911(a), a qualified individual is entitled to *544 exclude a portion of his foreign earned income from his gross income. To qualify for the exclusion, a taxpayer must satisfy a two-prong test. Sec. 911(d); Harrington v. Commissioner, 93 T.C. 297, 303-304 (1989). First, the taxpayer must have a "tax home" in a foreign country during the tax year in question. Second, the taxpayer must satisfy either the bona fide residence test or the physical presence test. Sec. 911(d)(1). Petitioners bear the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). For purposes of section 911, the term tax home is defined as the individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). Sec. 911(d)(3). However, section 911(d)(3) further provides that "An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States." (Emphasis added.) See also sec. 1.911-2(b), Income Tax Regs.
The determination of an individual's tax home therefore requires the application of a general rule subject to an overriding exception. An individual will not be treated as having a tax home in a foreign country for any *545 period in which his "abode" is within the United States. Sec. 911(d)(3). In earlier opinions, we distinguished the meaning of tax home and abode and stated that "'Abode' has been variously defined as one's home, habitation, residence, domicile or place of dwelling. * * * Thus, 'abode' has a domestic rather than vocational meaning, and stands in contrast to 'tax home' as defined for purposes of section 162(a)(2)." Lemay v. Commissioner, 837 F.2d 681, 683 (5th Cir. 1988), affirming a Memorandum Opinion of this Court (quoting Bujol v. Commissioner, T.C. Memo 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988)). Therefore, if petitioners maintained their abode in Georgia throughout 1986, they do not qualify for the foreign earned income exclusion. In prior cases similar to the one at hand, we have applied a domestic ties analysis in determining whether a taxpayer's abode remained within the United States. Harrington v. Commissioner, 93 T.C. at 308. [3] The domestic ties analysis requires a comparison of the taxpayer's familial, economic, and personal ties to the United States with his ties to the foreign country. Consequently, where a taxpayer has *546 limited or transitory ties to a foreign country, and his ties to the United States remain strong, we have held that his abode remained within the United States. Harrington v. Commissioner, 93 T.C. at 308, and cases cited therein.
Petitioner had extensive ties to the United States throughout 1986. He returned to his home at the beginning of each rest period. Therefore, petitioner spent about 50 percent of his time during the taxable year at issue with his family in Blairsville, Georgia. Petitioners jointly owned a home in Georgia. Petitioner's wife lived at their home in Georgia throughout 1986. Petitioner left his personal possessions at his home while he was on the oil rig. He maintained bank and credit card accounts in Georgia and possessed a Georgia driver's license. Moreover, he owned motor vehicles *547 which were registered in Georgia. In contrast, petitioner had virtually no contacts with Brazil. Petitioner had no social or business contacts in Brazil apart from his duties on the rig. He maintained no accounts in Brazil and the only time he spent in Brazil was en route to, or from, Georgia on each of his rest periods. Based on petitioner's economic, familial, and personal ties to Georgia, and based further on his lack of contact with Brazil, we conclude that petitioner's abode remained within the United States throughout the tax year in question. Therefore, we hold that petitioner failed to establish a tax home in Brazil and is ineligible for the foreign earned income exclusion. Since petitioners failed to prove a tax home abroad, as a matter of law, petitioners do not qualify for the foreign earned income exclusion under section 911(a). Therefore, it is unnecessary to determine whether petitioner satisfied the second prong of the test required for petitioners to be eligible for the foreign earned income exclusion, i.e., the bona fide residence test or the physical presence test. For the same reason, it is also unnecessary to determine whether petitioner qualified under *548 section 911(d)(4) for a waiver of the period of stay. Finally, we have reviewed petitioners' remaining argument and find it without merit and unsupported by the facts. Petitioners contend that respondent should be estopped from determining a deficiency in their 1986 Federal income tax. Petitioners have not met their burden of proof in that they failed to establish the two basic elements of equitable estoppel: a misrepresentation by the Government and detrimental reliance on the misrepresentation. Cf. Graff v. Commissioner, 74 T.C. 743, 760-765 (1980), affd. 673 F.2d 784 (5th Cir. 1982) (discussing the traditional elements of equitable estoppel). Sheer necessity further dictates this result. As one court noted, "the Commissioner, confronted by millions of returns and an economy which repeatedly must be nourished by quick refunds, must first pay and then look. This necessity cannot serve as the basis of an 'estoppel.'" Gordon v. United States, 757 F.2d 1157, 1160 (11th Cir. 1985) (quoting Warner v. Commissioner, 526 F.2d 1, 2 (9th Cir. 1975)). To reflect the foregoing, Decision will be entered for the respondent for the deficiency and for the petitioners for the *549 additions to tax.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code as amended and in effect for the taxable year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. On brief, respondent conceded the additions to the tax under sec. 6653(a)(1)(A) and (B).↩
3. See also Abrams v. Commissioner, T.C. Memo 1990-517; Dye v. Commissioner, T.C. Memo 1990-420; Moudy v. Commissioner, T.C. Memo 1989-216; Adams v. Commissioner, T.C. Memo 1989-91↩.