PATRICK J. ABRAMS and PAULA R. ABRAMS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Abrams v. Commissioner
Docket No. 5952-88
United States Tax Court
T.C. Memo 1990-517; 1990 Tax Ct. Memo LEXIS 570; 60 T.C.M. (CCH) 915; T.C.M. (RIA) 90517; September 27, 1990, Filed *570 Decision will be entered for the respondent. Gregory A. Henry, for the petitioners. Kevin M. Murphy, for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6661 [1]
1982
$ 6,619.00
$ 1,654.75
1983
5,890.00
1,472.50
1984
3,077.00
-
*572 The issue for decision is whether petitioner, [2] during the years at issue, established a "tax home" in India or Angola for purposes of the section 911 foreign earned income exclusion. FINDINGS OF FACT Some of the facts have been stipulated, and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Patrick and Paula Abrams resided in Bradford, Pennsylvania, at the time they filed their petition. For the years in issue, petitioners filed joint Federal income tax returns. From September 1981 through November 1983, petitioner was employed by Halliburton Company (Halliburton) as a cementer on an offshore oil rig located in the territorial waters of India. From December 1983 through December 1984, petitioner performed similar services on an oil rig located within the territorial waters of Angola. While employed with Halliburton, petitioner's work schedule consisted *573 of alternating 28-day periods on and off duty. Upon completion of each 28-day work period abroad, petitioner returned to Bradford, Pennsylvania, for a 28-day rest period (excluding travel time). During taxable year 1982, petitioner generally stayed with his parents when he returned to Bradford, Pennsylvania. On occasion, petitioner would stay with a "couple" of different female acquaintances with whom he had entered relationships. On November 17, 1982, petitioner married and began sharing an apartment in Bradford with his wife, Paula Abrams. From November 1982 through August 1984, petitioner resided with his wife at their apartment in Bradford during each 28-day rest period. Petitioner shared the expense of maintaining the apartment until August 1984, when the Abrams purchased a new home in Bradford. On November 19, 1982, petitioners opened a joint bank account in Bradford. Petitioner also possessed an Ohio State driver's license throughout 1982, 1983, and 1984. During the 28-day work periods, petitioner's employer provided him with food and lodging aboard the oil rig. During 1982, petitioner spent a significant part of each work period aboard the rig but occasionally visited *574 the mainland of India. Petitioner's primary contact with the local populace on the mainland was in bars, hotels, and restaurants. During petitioner's 28-day work periods, he occasionally visited the mainland and entertained employees of the Oil and Natural Gas Commission of India (ONGC). During his free time within the 28 - day work periods, petitioner dated several Indian women and toured several Indian cities, such as Hyderabad, Bombay, Vijayawada, and Madras. Petitioner also visited countries surrounding India, such as Bangladesh and Afghanistan. During taxable year 1983, petitioner returned to the United States to reside with his wife during each 28-day rest period. Petitioners continued to maintain a bank account in Bradford, Pennsylvania, and share in the expense of maintaining an apartment. During 1983, petitioner had only limited interaction with local Indian residents as he occasionally entertained ONGC employees and toured several cities. Throughout 1982 and 1983, petitioner did not purchase a home, maintain an apartment, open a bank account, or obtain a license to drive in India. Petitioner, did, however, obtain a resident visa for tourism. Petitioner gained only *575 enough familiarity with the native language to enable him to translate a restaurant menu. In December of 1983, petitioner left the oil rig located in the territorial waters of India and began working on an offshore oil rig located near Angola. Through most of 1984, petitioner and his wife resided at their apartment in Bradford during each 28-day rest period. In August of 1984, petitioners purchased a home in Bradford. During each work period in 1984, petitioner returned to the rig located in the Angolan territorial waters. Consistent with previous work assignments, petitioner's employer provided food and lodging aboard the oil rig. While employed in Angola, petitioner did not maintain a residence or bank account, and petitioner did not obtain an Angolan driver's license. Petitioner had only limited interaction with the residents of Angola partly because political unrest made it dangerous to visit the mainland. However, petitioner did take active part in a clothing drive for the benefit of an Angolan mission. Petitioner's role in the clothing drive consisted of contacting the monsignor at his church in Bradford, requesting a contribution of clothes, collecting the clothes, and delivering *576 the clothes to the Angolan mission. During the years in issue, Halliburton paid all expenses associated with petitioner's travel between the United States and abroad. Halliburton not only provided petitioner's food and lodging while aboard the oil rig, but also paid all foreign income taxes relating to petitioner's earnings from his employment on the rig. In 1982 and 1983, petitioner listed the United States as a tax home on his Federal income tax returns. On petitioner's 1984 Federal tax return, he listed Nigeria as a tax home. Petitioner received wages from Halliburton and claimed a foreign earned income exclusion under section 911(a)(1) pursuant to the "bona fide resident" test of section 911(d)(1)(A) for the years and in the amounts set forth below: Taxable Year
Wages
Foreign-earned Income Exclusion
1982
$ 25,971.00
$ 25,971.00
1983
26,690.40
26,690.40
1984
27,786.00
27,786.00
Petitioner concedes that he does not qualify for a foreign earned income exclusion during the years at issue under the provisions of section 911(d)(1)(B) due to the failure to meet the "physical presence test." OPINION Section 911(a)(1) allows a "qualified *577 individual" to exclude foreign earned income from gross income. Section 911(d)(1) defines a "qualified individual" as one who has a "tax home" in a foreign country and who is: (1) a citizen of the United States, and establishes to the satisfaction of the Secretary that he has been a "bona fide resident" of a foreign country for an uninterrupted period which includes an entire taxable year (bona fide residence test); or (2) a citizen or resident of the United States, and who is physically present in a foreign country for at least 330 full days during the taxable year (physical presence test). Thus, to be entitled to the foreign earned income exclusion within the context of section 911, an individual must have his "tax home" in a foreign country and satisfy either the "bona fide residence" requirement or "physical presence" requirement of section 911(d)(1). We will first consider whether petitioner's "tax home" was in a foreign country for the taxable years at issue. Petitioner bears the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). For purposes of section 911, the term "tax home" is defined in section 911(d)(3), which provides as *578 follows: Tax home. -- The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States. [Emphasis added.] Section 1.911-2(b), Income Tax Regs., elaborates on the definition of "tax home" and its relationship to the taxpayer's abode: (b) Tax home. * * * An individual shall not, however, be considered to have a tax home in a foreign country for any period for which the individual's abode is in the United States. Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not the dwelling is used by the individual's spouse and dependents, does not necessarily mean that the individual's abode is in the United States. Thus, the determination of an individual's "tax home" for the purposes of the foreign earned income exclusion *579 requires the application of a general rule subject to an overriding exception. The general rule for purposes of section 162(a)(2) states that the individual's tax home is considered to be located at his regular or principal place of business. Sec. 1.911-2(b), Income Tax Regs. Section 911(d)(3) disengages the general rule in the event that an individual's "abode" is in the United States. In Bujol v. Commissioner, T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988), we considered the meaning of the word "abode" as used in section 911(b)(3) and stated: "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [Fn. ref. omitted] [3]
*580 Based upon petitioner's economic, familial, and personal ties to Pennsylvania, and his lack of such ties with India or Angola, we conclude that his "abode" remained in the United States. By the nature of his employment, petitioner was free to leave the rig each 28 days. He made no effort to acquire a home or maintain an apartment in either India or Angola. Rather, throughout the years at issue, petitioner returned to Pennsylvania each 28-day rest period. From November 1982 through August 1984, petitioner and his wife shared the expense of maintaining an apartment in Pennsylvania. In August 1984, petitioners purchased a home in Pennsylvania. During the years in issue, petitioner maintained a bank account in Pennsylvania and possessed a United States driver's license. During the years 1982 through 1984, petitioner clearly maintained significant ties to the United States. By contrast, during these years, petitioner had only minimal contact with India or Angola. Petitioner did not maintain a foreign bank account or possess a foreign driver's license. During 1982, petitioner's interaction with the Indian community was limited to occasionally entertaining ONGC employees and dating *581 a few Asian women. After his marriage in 1982, petitioner's involvement with the Indian community became even more insignificant in 1983. Clearly, petitioner's contacts with India were tenuous when compared with his contacts with the United States. Similarly, during 1984, petitioner's integration with the Angolan community was minimal. Petitioner suggests that he integrated into the local life by playing an active role in a clothing drive for an Angolan mission. But an act of local benevolence does not establish the type of participation in the life of the local community to render such community petitioner's abode. In fact, in his testimony concerning the clothing drive, petitioner referred to the church that provided the clothing as "our church, the Catholic Church in Bradford, Pennsylvania." Petitioner's lack of integration is also evidenced by his scant knowledge of Portuguese, the primary language of Angola. During 1984, petitioner's ties with Angola were insignificant when compared with his ties to the United States. During taxable years 1982 through 1984, petitioner's abode remained in the United States. We hold, therefore, that petitioner failed to establish a "tax *582 home" in India or Angola and is ineligible for the foreign earned income exclusion. Consequently, it is unnecessary for us to decide whether petitioner qualified as a "bona fide resident." Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. All references to petitioner in the singular are to Patrick Abrams.↩
3. See also Lemay v. Commissioner, 837 F.2d 681 (5th Cir. 1988), affg. T.C. Memo. 1987-256; Bassett v. Commissioner, T.C. Memo. 1988-218↩.