ROBERT C. AND LANYA H. BUJOL, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bujol v. Commissioner
Docket No. 2962-86.
United States Tax Court
T.C. Memo 1987-230; 1987 Tax Ct. Memo LEXIS 234; 53 T.C.M. (CCH) 762; T.C.M. (RIA) 87230; May 5, 1987. *234 Mr. Bujol was employed on an oil rig off the coast of the United Arab Emirates. Mr. Bujol's work schedule consisted of a 28-day work period followed by a 28-day rest period. The work period was spent entirely on the rig, and the rest period was spent either at his residence in Louisiana or in transit to or from the rig. Mr. Bujol was required to maintain a residence in the United States, wherein his wife and daughter resided throughout the year at issue. Held: Mr. Bujol's "abode" remained at his residence in Louisiana; consequently, Mr. Bujol did not have a "tax home" in a foreign country for purposes of sec. 911. C. Jerre Lloyd, for the petitioners. Timothy Burgmeier, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in petitioners' 1982 Federal income tax in the amount of $10,879. The issue for decision is whether petitioner Robert C. Bujol (hereinafter referred to as Bujol or petitioner) established a tax home in, and became a bona fide resident of, the United Arab Emirates (U.A.E.) for purposes of the section 911[1] *235 foreign earned income exclusion. FINDINGS OF FACT Some of the facts have been stipulated, and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Bujol and Lanya H. Bujol, husband and wife, resided in Lafayette, Louisiana, at the time they filed their petition herein. For the year in issue, petitioners timely filed a joint individual income tax return. Throughout his taxable year ending December 31, 1982, Bujol was employed by the Penrod Drilling Company (Penrod) as a driller and tool pusher on an offshore oil rig located in the U.A.E.'s territorial waters. As a result of his employment aboard the rig, Bujol was issued a resident visa and was subject to the U.A.E.'s jurisdiction. Bujol's only contact with the U.A.E., however, was a layover in Abu Dhabi en route to and from the United States. Bujol did not maintain a bank account, nor was he licensed to drive, within the U.A.E. Bujol's work schedule consisted of alternating 28-day periods on and off duty. Bujol would fly from his residence in Louisiana to Abu Dhabi, and thence to the rig, for a continuous work period of approximately *236 28 days. Upon completion of his work period, Bujol would return to Louisiana via Abu Dhabi for a continuous rest period of approximately 28 days. Bujol spent his entire work period on the rig and his entire rest period either in Louisiana or in transit to or from the rig. Penrod paid all expenses associated with Bujol's transportation, and provided him with food and lodging while aboard the rig. As a result of his employment with Penrod, Bujol spent 192 days outside of the United States during 1982. Bujol was stationed on a mobile rig that moved to six or eight different drill sites during 1982. At the direction of Penrod, and pursuant to United States Coast Guard regulations, Bujol was required to obtain an able-bodied seaman's license to qualify for employment on the rig. Bujol's duties, however, were strictly those of a driller and tool pusher. Bujol was prohibited by Penrod policy from living ashore in the U.A.E. during either his work period or rest period. Additionally, Bujol's wife and daughter were prohibited from living aboard the rig or ashore at any time. Bujol applied for employment as a warehouseman with the intent of moving his family to the U.A.E., but a slump in *237 the oil market eliminated the position. Penrod required Bujol to maintain a residence in the United States, and to travel directly between his residence and the rig. This requirement was based upon Penrod's liability for employees in transit to and from their workplace. In compliance with this requirement, Bujol maintained a residence in Lafayette, Louisiana, which he listed with Penrod as his current address. Bujol's wife and daughter lived in the residence maintained in Lafayette. Bujol returned directly to this residence during each of his 28-day rest periods. Petitioners owned two cars in Lafayette, one registered in each of their names. Additionally, Bujol was registered to vote in Lafayette and possessed Louisiana state drivers, hunting, and fishing licenses. As a result of his employment overseas, Bujol received a 25-percent bonus. From his salary of $57,785.92, Bujol claimed a foreign earned income exclusion in the amount of $39,000 pursuant to the "bona fide resident" test of section 911(d)(1)(A). Bujol paid no taxes to the U.A.E. as a result of his employment on the rig. Petitioners concede that Bujol does not qualify for a foreign earned income exclusion during 1982 *238 under the provisions of section 911(d)(1)(B). OPINION The issue for decision is whether Bujol maintained a tax home in, and was a bona fide resident of, the U.A.E. for an uninterrupted period that included an entire taxable year. If so, Bujol constitutes a "qualified individual" for purposes of section 911 and is entitled to the foreign earned income exclusion. [2] Petitioners contend that Bujol qualifies for the earned income exclusion while respondent maintains that he does not. Section 911(a)(1) allows a "qualified individual" to exclude foreign earned income from gross income. [3] A "qualified individual" is defined in section 911(d)(1)(A)[4] as one who has a "tax home" in a foreign country and who, as a citizen of the United States, establishes to the satisfaction of the Secretary that he has been a "bona fide resident" of a foreign country for an uninterrupted period which includes an entire taxable year. Thus, a "qualified individual" must meet both the "tax home" and "bona fide resident" requirements to be eligible for the foreign earned income exclusion. *239 See sec. 1.911-2(a), Income Tax Regs.
For purposes of section 911, the term "tax home" is defined in section 911(d)(3), which provides as follows: Tax Home. -- The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be *240 treated as having a tax home in a foreign country for any period for which his abode is within the United States. [5] *241 Thus, the determination of an individual's "tax home" for purposes of the foreign earned income exclusion requires the application of a general rule subject to an overriding exception. In the event that an individual's "abode" is in the United States, a determination of that individual's "tax home" within the meaning of section 162(a)(2) is immaterial. [6]
"Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, "abode" has a *242 domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [7] Based upon Bujol's economic, familial, and personal ties to Louisiana, and his lack of contact with the U.A.E., we conclude that his "abode" remained in the United States. Bujol's contacts with Louisiana were as a resident and domiciliary, whereas his contacts with the U.A.E. were transitory at best. As a condition of employment, Penrod required Bujol to maintain a residence in the United States, and to travel directly to and from the rig. Bujol was required to *243 live on the rig during his 28-day work period, and was prohibited from living ashore during his rest period. Bujol's family was not allowed to live either on the rig or in the U.A.E. Consequently, petitioner owned a home in Lafayette wherein Mrs. Bujol and their daughter resided and to which Bujol immediately returned upon completion of his work period. It was neither reasonable, practicable, nor possible for Bujol to establish an "abode" in the U.A.E. in any real or substantial sense. We hold that Bujol failed to establish a "tax home" in the U.A.E. and is ineligible for the foreign earned income exclusion. Consequently, it is unnecessary for us to decide whether Bujol qualified as a "bona fide resident." [8] *244 Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.
2. Respondent does not dispute that Bujol's wages earned as a result of his employment on the rig constitute "foreign earned income."↩
3. SEC. 911. CITIZENS OR RESIDENTS OF THE UNITED STATES LIVING ABROAD. (a) Exclusion from Gross Income. -- At the election of a qualified individual (made separately with respect to paragraphs (1) and (2)), there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year -- (1) the foreign earned income of such individual, and ↩
4. Sec. 911(d) Definitions and Special Rules. -- For purposes of this section -- (1) Qualified Individual. -- The term "qualified individual" means an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, * * *↩
5. Sec. 1.911-2(b), Income Tax Regs., elaborates on the definition of "tax home" and its relationship to the taxpayer's abode: (b) Tax home. For purposes of paragraph (a)(1) of this section, the term "tax home" has the same meaning which it has for purposes of section 162(a)(2) (relating to travel expenses away from home). Thus, under section 911, an individual's tax home is considered to be located at his regular or principal (if more than one regular) place of business or, if the individual has no regular or principal place of business because of the nature of the business, then at his regular place of abode in a real and substantial sense. An individual shall not, however, be considered to have a tax home in a foreign country for any period for which the individual's abode is in the United States. Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean that the individual's abode is in the United States. The tax home requirement and definition found in sec. 911(d)(3) and sec. 1.911-2(b), Income Tax Regs.↩, originated in the now-repealed sec. 913(j)(1)(B) and regulations thereunder. 6. We emphasize that the overriding exception provided for in determining a taxpayer's "tax home" for purposes of the foreign earned income exclusion in no way affects the determination of a taxpayer's "tax home" for purposes of sec. 162(a)(2)↩.
7. This Court has held that a taxpayer's "tax home" for purposes of sec. 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not where his personal residence is located. Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Daly v. Commissioner,72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner,49 T.C. 557↩ (1968). Due to our determination as to Bujol's "abode," we do not reach the issue of whether there is any significance to the fact that Bujol's place of employment was a floating rig, i.e., a vessel, moored in foreign territorial waters.
8. In Swenson v. Thomas,164 F.2d 783 (5th Cir. 1947), a taxpayer who spent a "continuous and unbroken" period of 4 years in the jungles of Colombia, South America, was found to be a bona fide resident of Colombia "notwithstanding the fact that he established no fixed home in Colombia, or even a settled place of abode * * *." Pursuant to sec. 116(a), of the Internal Revenue Code of 1939 in effect during 1943-1944, the foreign earned income exclusion was available to citizens of the United States who were bona fide residents of a foreign country. There was no requirement that the individual have a tax home in a foreign country, nor a prohibition against maintaining an abode in the United States. Thus, Swenson↩ involved different facts and was decided under different law. Consequently, we see no conflict between that case and our holding herein.