T.C. Memo. 2013-77

UNITED STATES TAX COURT

WILLIAM D. ROGERS AND YEN-LING K. ROGERS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13261-11. Filed March 13, 2013.

William D. Rogers and Yen-Ling K. Rogers, pro sese.

<u>Sarah E. Sexton</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>: Respondent determined a $3,428.30 deficiency and a

$685.66 section 6662(a) penalty with respect to petitioners' Federal income tax for

2007. The issues for decision are whether all or a portion of petitioners' income

may be excluded under section 911 and whether petitioners are liable for the

[*2] accuracy-related penalty. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.

At all material times, Yen-Ling K. Rogers (petitioner) was a U.S. citizen and a bona fide resident of Hong Kong. She worked as a flight attendant for United Airlines (United) on international flights based out of Hong Kong International Airport. The scope of her employment and compensation was determined under the 2005-2010 Agreement Between United Airlines, Inc., and the Flight Attendants (2005-2010 Agreement). Pursuant to the 2005-2010 Agreement (1) petitioner accrued nonflight time, such as sick and vacation hours, based on the period of her flight attendant service; and (2) United compensated petitioner for additional categories, such as required training and meetings and the performance incentive program.

United required petitioner to perform preboarding and postarrival services on every flight on which she worked. She was required to report to work 1 hour and 45 minutes before the departure of a flight and to perform approximately 30

[*3] minutes of postarrival services.  The flight time begins at "out time", when the plane's brake is released and the plane pushes back from the airport.  The flight time ends at "in time" when the plane's parking brake is set after landing.  Petitioner was not separately compensated for the time spent performing preboarding and postarrival services.

Petitioner worked the following flights in 2007:  16 flights between Hong Kong (HK) and San Francisco (SFO); 16 flights between SFO and HK; 14 flights between HK and Chicago (CHI); 14 flights between CHI and HK; 5 flights between HK and Ho Chi Minh City; 5 flights between Ho Chi Minh City and HK; 2 flights between SFO and Nagoya; and 2 flights between Nagoya and SFO.

The percentage of petitioner's flight time within or over foreign countries during 2007 was as follows:

| Itinerary | Foreign flight time (percent) |
| --- | --- |
| HK-SFO-HK | 63.38 |
| HK-CHI-HK | 86.05 |
| HK-Ho Chi Minh City-HK | 100 |
| SFO-Nagoya-SFO | 29.19 |

United reported $41,762.10 of wages to petitioner for 2007 on Form W-2, Wage and Tax Statement.  Her pay statements from United allocated her 2007 wages between U.S. taxable income and Hong Kong taxable income.  United

**[*4]** provided petitioner a duty time apportionment for her flights during 2007 that apportioned the minutes of her flight times within or over the United States, international waters, and foreign countries.

Petitioners excluded 100% of petitioner's United wages, $41,762.10, as "other" income on a jointly filed 2007 Form 1040, U.S. Individual Income Tax Return, which specified the "other" income by reference to the attached Form 2555-EZ, Foreign Earned Income Exclusion.  On the Form 2555-EZ petitioners  reported $41,762.10 as the total amount of foreign earned income petitioner earned and received in 2007 and the same amount as their foreign earned income exclusion. Petitioner prepared the return.

On December 30, 2010, respondent sent petitioners a notice of deficiency determining that:  (1) petitioners were not entitled to exclude the 100% of compensation petitioner received for flight time over international waters and the United States; (2) petitioner's HK-CHI-HK exclusion percentage was 73% and her HK-SFO-HK exclusion percentage was 22%; (3) flight times were based on the duty time apportionment for petitioner's flight routes and other information using the average time over foreign countries during 2007; and (4) the percentages were average approximate percentage minutes of petitioner's flight times over foreign

**[\*5]** countries over petitioner's total minutes. The notice of deficiency did not determine a percentage for petitioner's SFO-Nagoya-SFO flights.

OPINION

Generally, taxpayers have the burden of proving that the Commissioner's determination is in error. See Rule 142(a)(1). However, the burden of proof may shift to the Commissioner under certain circumstances. See sec. 7491(a)(1). This case involves application of law to essentially undisputed facts. Although petitioner quarrels with the methodology used to determine her actual flight times, the parties stipulated the percentages set forth in our findings of fact. The burden of proof does not affect our decision as to the deficiency.

Foreign Earned Income

Petitioner was a U.S. citizen, as she was in 2002 and 2003, years previously litigated in this Court. In Rogers v. Commissioner, T.C. Memo. 2009-111, we stated the applicable rules, and we incorporate, repeat, and supplement that explanation here. Section 61(a) specifies that "[e]xcept as otherwise provided", gross income includes "all income from whatever source derived". Although most countries employ territorial tax systems, the United States employs a worldwide tax system--it taxes its citizens on their income regardless of its geographic source. See Crow v. Commissioner, 85 T.C. 376, 380 (1985) ("The United States was

[*6] historically, and continues to be, virtually unique in taxing its citizens, wherever resident, on their worldwide income, solely by reason of their citizenship."); see also Specking v. Commissioner, 117 T.C. 95, 101-102 (2001), aff'd sub nom. Haessly v. Commissioner, 68 Fed. Appx. 44 (9th Cir. 2003), and aff'd sub nom. Umbach v. Commissioner, 357 F.3d 1108 (10th Cir. 2003). However, as is often the case with our tax laws, there are exceptions. Section 911, which applies to petitioners, is an exception to the U.S. worldwide tax system.

Section 911(a) allows a "qualified individual" to exclude from gross income "foreign earned income". Foreign earned income is "the amount received by such individual from sources within a foreign country * * * which constitute earned income attributable to services performed by such individual". Sec. 911(b)(1)(A). Section 911 does not define "foreign country". The regulations provide:

> The term "foreign country" when used in a geographical sense includes any territory under the sovereignty of a government other than that of the United States. It includes the territorial waters of the foreign country (determined in accordance with the laws of the United States), the air space over the foreign country, and the seabed and subsoil of those submarine areas which are adjacent to the territorial waters of the foreign country and over which the foreign country has exclusive rights, in accordance with international law, with respect to the exploration and exploitation of natural resources. [Sec. 1.911-2(h), Income Tax Regs.]

**[\*7]** "Consistent with this regulation, this Court has held that a U.S. taxpayer is allowed the foreign earned income exclusion only with respect to wages earned while in or over foreign countries and not for wages earned in international airspace or in or over the United States." LeTourneau v. Commissioner, T.C. Memo. 2012-45; Rogers v. Commissioner, T.C. Memo. 2009-111; see also United States v. Cabaccang, 332 F.3d 622, 626 (9th Cir. 2003) ("Unlike, for example, a foreign nation--which is unquestionably a 'place outside' the United States--international airspace is neither a point of origin nor a destination of a drug shipment; it is merely something through which an aircraft must pass on its way from one location to another."); Clark v. Commissioner, T.C. Memo. 2008-71 ("[I]nternational waters are not a 'foreign country' for purposes of section 911, and income * * * earned while traveling in international waters is not 'foreign earned income' excludable from gross income.").

Although petitioners excluded 100% of petitioner's 2007 United wages as foreign earned income, they stipulated that only a percentage of petitioner's flight time occurred within or over foreign countries. Therefore, only a percentage of petitioner's United wages qualifies for the section 911(a) exclusion. See LeTourneau v. Commissioner, T.C. Memo. 2012-45; Rogers v. Commissioner,

**[*8]** T.C. Memo. 2009-111; <u>see also</u> <u>Cabaccang</u>, 332 F.3d at 626; <u>Clark v. Commissioner</u>, T.C. Memo. 2008-71.

Petitioners argue that wages allocable to petitioner's nonflight time, such as vacation and training pay, are 100% foreign earned income. Respondent contends that all of petitioner's 2007 United wages should be allocated in proportion to her flight time because her earnings were inextricably based on her flight time services. Section 911(d)(2) provides that "[t]he term 'earned income' means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered". <u>See also</u> sec. 1.911-3(b)(1), Income Tax Regs. In general, we look to the place where the services are performed and not the place the compensation was paid or the location of the taxpayer at the time of payment to determine whether compensation is treated as income from sources within a foreign country. <u>See</u> <u>Kollmar v. Commisioner</u>, 4 T.C. 727, 731 (1945); <u>see also</u> <u>Zimmerman v. Commissioner</u>, 36 T.C. 235, 237 (1961); sec. 1.911-3(a), Income Tax Regs. United required petitioner to perform preboarding and postarrival services on every flight she worked and did not specifically compensate her for those services. Hence, those services are inextricably linked to each of her completed international flights regardless of whether she performed preboarding and postarrival services within the United States or within a foreign

**[*9]** country. In addition, the 2005-2010 Agreement establishes that petitioner accrued nonflight time, such as sick and vacation hours, based on the period of her flight attendant service. Although petitioner may have spent sick leave or vacation leave within a foreign country, the basis for her receipt of compensation in connection therewith was her international flight attendant services, only a percentage of which were performed in (or over) foreign countries. The 2005-2010 Agreement also establishes that United compensated petitioner for additional categories, such as required training and meetings and the performance incentive program. We conclude that petitioner's stipulated flight time percentages apply to any of her wages that are allocable to nonflight time that was based on international flight attendant services she performed for United. There is no rational basis for allocating these forms of compensation 100% to foreign earned income. See Kollmar v. Commisioner, 4 T.C. at 731; LeTourneau v. Commissioner, T.C. Memo. 2012-45; Rogers v. Commissioner, T.C. Memo. 2009-111; see also Zimmerman v. Commissioner, 36 T.C. at 237.

Section 6662(a) Penalty

The Commissioner has the burden of producing evidence that the section 6662(a) penalty applies. See sec. 7491(c). However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer,

**[\*10]** including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Section 6662(a) and (b)(1) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations.  Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and defines disregard as any careless, reckless, or intentional disregard.  The accuracy-related penalty under section 6662(a) is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448.  The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.  "Generally, the most important factor is the extent of the taxpayer's effort to assess * * * [his or her] proper tax liability."  Id. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the

**[\*11]** [relevant] facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id. Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs.

Respondent has met the burden of production by showing that only a portion of petitioner's United wages qualified as foreign earned income excludable under section 911(a) and that petitioners excluded 100% of those wages on their return.

We conclude that petitioners failed to prove that they acted with reasonable cause and in good faith in excluding 100% of petitioner's 2007 United wages as foreign earned income pursuant to section 911(a), and we sustain the section 6662(a) penalty. Although at the time petitioners filed the 2007 Federal income tax return, the Court's opinion in petitioners' prior case, Rogers v. Commissioner, T.C. Memo. 2009-111, had not yet been filed, petitioners were well aware that a percentage of petitioner's United wages was taxable. United had notified petitioner as early as 2002 that a portion of her pay was taxable. Petitioner acknowledges that "Petitioners filed their 2005 and 2006 tax returns according to

[*12] the IRS' new interpretation and calculation format for fear of further audits, [and] Petitioners read the tax regulations and believe the IRS' interpretation and calculation format were not following the whole statue [sic]". Her United pay statements allocated her 2007 wages between U.S. taxable income and Hong Kong taxable income. Before the date on which petitioners filed their 2007 Federal income tax return that petitioner prepared, United had provided her a duty time apportionment setting forth her estimated flight times, apportioning the minutes of those flight times as to minutes within or over the United States, international waters, and foreign countries and providing the percentages.

Petitioners were well aware that certain of their prior Federal income tax returns had excluded 100% of petitioner's United wages as foreign earned income and these returns were the subject of an Internal Revenue Service (IRS) audit and a subsequent notice of deficiency that was in issue in Rogers v. Commissioner, T.C. Memo. 2009-111. Petitioners were further well aware that certain of petitioner's 2007 flights had flown over U.S. airspace, and landed in and departed from U.S. cities (San Francisco and Chicago). However, petitioners argue that at the time petitioner prepared the 2007 Federal income tax return she had been unable to obtain her actual flight times, she read the law to require her to use

[*13] actual facts in preparing the return, and she believed that the IRS would not accept estimations. Nonetheless, petitioners chose to ignore that petitioner's flights landing in and departing from U.S. cities and her flight times established that 100% of her United income did not qualify as foreign earned income. Petitioners simply substituted their judgment for that of the IRS and United in excluding all of petitioner's United income from taxation. They did not prove that they sought competent professional advice, and they did not have reasonable cause for excluding all of her income from taxation.

In reaching our conclusions, we have considered all arguments made by the parties and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect differences between the statutory notice allowances and the stipulation of the excludable percentages of petitioner's income,

Decision will be entered

under Rule 155.