T.C. Memo. 2015-12

UNITED STATES TAX COURT

JOEL B. EVANS, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

JOEL B. EVANS AND DONNA R. EVANS, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 18268-12, 20818-12.        Filed January 20, 2015.

<u>Ray Cody Mayo, Jr.</u>, for petitioners.

<u>Edwin B. Cleverdon</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  In these consolidated cases, the Internal Revenue Service
(IRS or respondent) determined, against Joel B. Evans (petitioner) for the taxable
years 2007 and 2008 and against Joel B. Evans and Donna Evans (petitioners) for

[*2] the taxable years 2009 and 2010, deficiencies and accuracy-related penalties under section 6662[1] in the following amounts:

| Year | Deficiency | Penalty sec. 6662 |
|------|-----------|-------------------|
| 2007 | $8,123 | $1,625 |
| 2008 | 9,860 | 1,972 |
| 2009 | 6,447 | 1,289 |
| 2010 | 6,681 | 1,336 |

These cases present two questions for decision: (1) whether wages petitioner earned in Russia during 2007-2010 are excludable from gross income under section 911(a); and (2) whether petitioners are liable for accuracy-related penalties. We answer both questions in the negative.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Louisiana when they petitioned this Court.

---

[1]All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[*3]**  Petitioner grew up and attended high school in West Monroe, Louisiana. As a youth he lived with his parents on Donna Drive in West Monroe (Donna Drive residence). His parents continue to occupy the Donna Drive residence.

Petitioner began working in the oil industry in 1988 and was regularly posted to drilling locations overseas. While overseas, he used the Donna Drive residence as his address for purposes of receiving mail. During such periods his mother generally managed his business affairs. She had signature authority over his checking account and paid his bills as they became due.

In 1997 petitioner began working for Parker Drilling Co. (Parker). During the early 2000s he worked for Parker in Kazakhstan. During breaks in his work shifts he usually returned to West Monroe and stayed with his parents at the Donna Drive residence.

Petitioner married his first wife in 2003, and they built a house on Pleasant Valley Drive in West Monroe (Pleasant Valley Drive residence). They had one child. After completion of the Pleasant Valley Drive residence petitioner returned to it, rather than to the Donna Drive residence, when he came back to the United States on home leave.

In 2006 petitioner was promoted to a management position at Parker's facilities on Sakhalin Island in Russia. In this capacity petitioner supervised both

[*4] land and offshore rigs. Sakhalin Island is a remote location, and weather conditions there are harsh. Petitioner's base of operations was Yuzhno, a relatively large city. He continued working at this Sakhalin Island post through 2010.

Petitioner's work schedule during 2007-2010 consisted of alternating 30-day periods on and off duty. During his on-duty periods he lived in employer-provided housing. He lived initially in a four-bedroom apartment in Yuzhno provided by Parker, which he shared with several other Parker employees. He later lived in two other staff houses. Parker provided him with a car and a driver because his Russian visa did not permit him to drive.

Roughly three times a year petitioner spent one to three weeks on an off-shore drilling platform. During these periods he slept on the platform and ate employer-provided meals. When on land petitioner occasionally interacted with the local population of Sakhalin Island as time and circumstances allowed. He learned some basic Russian phrases but generally relied on translators provided by Parker. He and his first wife were divorced in 2007, and he sometimes dated Russian women after that time.

Throughout the tax years in issue petitioner maintained his ownership of the Pleasant Valley Drive residence. At no time did he rent it out or attempt to rent it

[*5] out.  With his mother's assistance he made the monthly mortgage payments, kept the homeowner's insurance current, paid for all utilities, and had the exterior of the house and yard maintained.  The house was available at all times for his use and that of his family.

Following the divorce, petitioner's ex-wife left the Pleasant Valley Drive residence and his daughter moved in with his parents.  His mother generally cared for his daughter during 2007-2009.  While he was overseas, his mother often took the daughter for overnight stays at the Pleasant Valley Drive residence to enable her to visit friends in that neighborhood.

During his 30-day off-duty periods petitioner usually returned to West Monroe in order to spend time with his family.  Whenever he returned home Parker paid the cost of his flights to and from Russia.  On average, he spent approximately 23 days of each off-duty period in West Monroe.  For the duration of his home leave he stayed at the Pleasant Valley Drive residence and his daughter almost invariably joined him there.

No one lived full time in the Pleasant Valley Drive residence until September 2009, when petitioner married Donna Evans.  At that time she moved into petitioner's home and lived there throughout the remainder of 2009 and 2010.

**[*6]** After his remarriage petitioner spent virtually all his off-duty periods with his family at the Pleasant Valley Drive residence.

No family member ever accompanied petitioner to Russia. During the years in issue he held a Russian visa with a "resident work" permit. Although this visa allowed him to remain in Russia long term, it did not permit him to bring family members with him. He once tried to secure a visa for his daughter but was unable to do so.

Throughout the tax years in issue petitioner was registered to vote in Louisiana. He held a Louisiana driver's license, had bank and credit card accounts in Louisiana, and registered and maintained vehicles in Louisiana. His Federal income tax returns listed the Donna Drive address, where his mother resided, as his mailing address.

Petitioner timely filed individual income tax returns for 2007 and 2008, and he and Donna Evans timely filed joint tax returns for 2009 and 2010. His mother signed and submitted the 2007 and 2008 returns under a power of attorney; he and his wife personally signed the 2009 and 2010 returns. All four returns were prepared by Bradley Borden, a tax professional, using information that petitioner's mother supplied.

**[\*7]**   On each of these tax returns petitioner took the position that his tax home was in Russia and accordingly excluded his wages earned in Russia from his gross income under section 911(a).  The IRS determined that petitioner was not entitled to claim the foreign earned income exclusion and timely mailed separate notices of deficiency for 2007 and 2008 and for 2009 and 2010.  Petitioners timely petitioned this Court, and the cases were consolidated for purposes of trial, briefing, and opinion.

OPINION

I.     Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioners do not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.  Respondent bears the burden of production, but petitioners bear the burden of proof, with respect to the accuracy-related penalty under section 6662.  See sec. 7491(c).

II.    Foreign Earned Income Exclusion

Section 61(a) provides that gross income means "all income from whatever source derived."  Citizens of the United States are taxed on their worldwide in-

[*8] come unless a specific exclusion applies. Eram v. Commissioner, T.C. Memo. 2014-60, at *10. Exclusions from gross income are construed narrowly, and a taxpayer must clearly establish his entitlement to any such exclusion. Ibid.

Section 911(a) provides that a "qualified individual" may elect to exclude from gross income, subject to limitations set forth in subsection (b)(2), his or her "foreign earned income." To be entitled to this exclusion, a taxpayer must satisfy two distinct requirements. First, he must be an individual "whose tax home is in a foreign country." Sec. 911(d)(1). Second, he must either be a "bona fide resident" of one or more foreign countries or be physically present in such country or countries during at least 330 days in a 12-month period. Ibid.

We first consider whether petitioner's "tax home" during 2007-2010 was in Russia. Section 911(d)(3) defines the term "tax home" to mean, in the case of an individual, "such individual's home for purposes of section 162(a)(2)." Under section 162(a)(2), a person's home is generally considered to be the location of his regular or principal place of business. See Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). However, section 911(d)(3) goes on to provide that "[an] individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States." Thus, a person whose "abode" is within the United States cannot establish that his "tax home" is in a foreign coun-

**[\*9]** try.  <u>See</u> <u>Jones v. Commissioner</u>, 927 F.2d 849, 856 (5th Cir. 1991), <u>rev'g</u>

T.C. Memo. 1989-616; <u>Harrington v. Commissioner</u>, 93 T.C. 297, 307 (1989).

In <u>Bujol v. Commissioner</u>, T.C. Memo. 1987-230, 53 T.C.M. (CCH) 762,

<u>aff'd without published opinion</u>, 842 F.2d 328 (5th Cir. 1988), we considered the

meaning of the word "abode" as used in section 911(d)(3).  We there stated:

> "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling.  Black's Law Dictionary 7 (5th ed. 1979).  While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business.  Thus, "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2).

53 T.C.M. (CCH) at 763-764.  A taxpayer's "abode" is generally in the country in

which he has the strongest economic, family, and personal ties.  <u>Id.</u> at 764; <u>see also</u>

<u>Jones v. Commissioner</u>, 927 F.2d at 856.  A taxpayer posted abroad will invariably

have some connections with the foreign country in which he works, but if his ties

to the United States are stronger, we have held that his "abode" remains in the

United States.  <u>See, e.g.</u>, <u>Harrington v. Commissioner</u>, 93 T.C. at 308 (holding that

oilfield worker lacked "abode" in Angola).

We considered facts resembling those here in <u>Lemay v. Commissioner</u>, T.C.

Memo. 1987-256, 53 T.C.M. (CCH) 862, 864, <u>aff'd</u>, 837 F.2d 681 (5th Cir. 1988).

We there held that a taxpayer who worked alternating 28-day periods on and off

**[\*10]** duty for an oil company in Tunisia was ineligible for the section 911 foreign earned income exclusion.  Like petitioner, the taxpayer in Lemay was a resident of Louisiana, was registered to vote in Louisiana, possessed a Louisiana driver's license, and had a Louisiana bank account.  53 T.C.M. (CCH) at 863.  He maintained a home in Louisiana, where his wife and daughter lived, and he spent roughly half his time in Louisiana with them.  Id. at 864.  We concluded that the taxpayer's economic, family, and personal ties to the United States were sufficiently strong to create an "abode" in this country.  The Court of Appeals for the Fifth Circuit, to which appeal of these cases would lie absent stipulation to the contrary, affirmed our decision.  See Lemay v. Commissioner, 837 F.2d at 684 ("[W]e believe that the [T]ax [C]ourt's interpretation and application of section 911 in the instant case is consistent with the plain language of the Code and regulations thereunder.").

Petitioner's ties to Louisiana during 2007-2010 were at least as strong as, if not stronger than, those of the taxpayer in Lemay.  Throughout this period petitioner owned a house in West Monroe that he had built.  While he was overseas his first wife, his second wife, and his daughter lived in this house or in his parents' house, also in West Monroe.  During his off-duty periods petitioner regularly returned to West Monroe for an average of 23 days per period to be with his

**[\*11]** family.  His business affairs were generally handled by his mother, whose address in West Monroe he used as his mailing address.  His driver's license, voter registration, bank accounts, and motor vehicles were all centered in Louisiana.  His ties to Sakhalin Island, by contrast, were entirely transitory and did not extend much beyond the bare minimum required to perform his duties there.  See Daly v. Commissioner, T.C. Memo. 2013-147, at \*12 (finding military contractor lacked "abode" in Afghanistan where his ties to that country were "severely limited and transitory").

Petitioner points out that the taxpayers in Lemay and Bujol worked on off-shore oil rigs whereas he mostly supervised land rigs.  We find this a distinction without a difference.  The fact that petitioner spent most of his time on land may have facilitated more socializing with the residents of Sakhalin Island.  But this fact does not render his ties to Russia significantly less transitory or his ties to the United States any less predominant.

Petitioner also notes that his ties to Louisiana were divided between two residences.  He had ties to the Pleasant Valley Drive residence, where he lived with his family during home leave, and to the Donna Drive residence, which served as his mailing address and his daughter's residence until his remarriage.  He argues, in effect, that he did not "abide" at either residence.

[*12] Section 911(a) does not require that we determine which particular building in West Monroe constituted petitioner's "abode." Rather, as applied here, the statute asks whether his "abode" was in the United States or in Russia. Because of petitioner's family situation, he necessarily had ties both to his own home and to his parents' home. These two residences, together with his other ties to Louisiana, gave rise to an "abode" within the United States. See Moudy v. Commissioner, T.C. Memo. 1989-216, 57 T.C.M. (CCH) 327, 330 (concluding that taxpayer had an "abode" in the United States, even though he and his children sometimes lived with his parents, because an "abode" does not require maintenance of a separate and distinct house).

In asserting that his "abode" was in Russia, petitioner relies chiefly on Jones, which in his view supersedes the Court of Appeals for the Fifth Circuit's earlier decisions in Lemay and Bujol. In Jones, the taxpayer was a crew member for Japan Air Lines (JAL) who moved with his family to Japan upon commencing employment. 927 F.2d at 851-852. When JAL reassigned him to Alaska, its only U.S. base, his family moved there; when JAL reassigned him to Japan, his family could have joined him but decided not to. He paid for his own housing in Tokyo and lived there except when traveling for the airline or on vacation. Id. at 854. He paid for his own meals and for his vacation travel to the United States. The Court

**[*13]** of Appeals concluded that the taxpayer intended to become a resident of Japan; that he planned to live and work there until his retirement; and that these facts collectively were sufficient to establish that his "abode" was in Japan rather than in Alaska. See id. at 854, 857.

The Court of Appeals noted in Jones that Congress' purpose in adding the proviso concerning "abode" to section 911(d)(3) was to limit the benefits of the foreign earned income exclusion to taxpayers who actually incurred the duplicative costs of maintaining distinct U.S. and foreign households. See 927 F.2d at 856. The court found that the taxpayer in Jones did in fact incur the costs of maintaining two separate households. Id. at 857. Far from questioning its prior decisions involving oilfield workers, the court explicitly distinguished the Jones case from those earlier cases, where the taxpayers did not incur such duplicative costs:

> The facts in this case can easily be distinguished from oil rig and compound worker cases, such as Lemay and Bujol. In those cases, when the taxpayers were on duty on oil rigs or in the oil field compounds, they slept in employer-provided housing, ate employer-provided meals and returned home to the United States after each work period on employer-provided flights. In addition, the taxpayer's family was not allowed to join him abroad. These taxpayers * * * were essentially commuting on a regular basis from their homes in the United States. [Id. at 856-857.]

Petitioner has little in common with the taxpayer in Jones and much in common with the taxpayers in Lemay and Bujol. Unlike petitioner, the taxpayer in

**[*14]** Jones was a member of an airline flight crew; had a residence in the foreign country; was joined there by his family for a time; paid all of his own housing costs; paid for his vacation travel back to the United States; incurred the costs of maintaining two separate residences; and intended to become a resident of the foreign country and work there long term.  Like the taxpayers in Lemay and Bujol, petitioner was an oilfield worker abroad; was not and could not be joined by his family there; slept in employer-provided housing; ate employer-provided meals while on offshore drilling platforms; returned home to the United States during most off-duty periods; had the costs of his travel to and from the United States paid by his employer; and was "essentially commuting on a regular basis from * * * [his] home[] in the United States."  See Jones v. Commissioner, 927 F.2d at 857.

We are confident that the Court of Appeals for the Fifth Circuit would find these cases governed by the reasoning and result of Lemay and Bujol and factually distinguishable from Jones.  We reach the same conclusion on the basis of our own precedents.  Because petitioner's "abode" was within the United States during

**[\*15]** 2007-2010, he was not eligible to exclude his wages earned in Russia from gross income under section 911(a).[2]

## III.    Section 6662 Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a 20% accuracy-related penalty upon the portion of any underpayment of tax that is attributable (among other things) to negligence or disregard of rules or regulations.  "Negligence" is defined as "any failure to make a reasonable attempt to comply with the provisions of [the Code]," and "disregard" means any "careless, reckless, or intentional disregard."  Sec. 6662(c).  The Commissioner bears the burden of production with respect to a

---

[2]Because petitioner's possession of an "abode" within the United States is fatal to his claim, we need not decide whether he met the second requirement for the foreign earned income exclusion by satisfying the "bona fide residence" test of sec. 911(d)(1)(A).  (He clearly could not satisfy the 330-day "physical presence" test of sec. 911(d)(1)(B)).  On brief petitioner appears to argue that the tests for "abode" and "residence" should be the same.  In that he is mistaken.  The requirement that the taxpayer have his "abode" outside the United States, set forth in sec. 911(d)(3), is clearly distinct from the requirement that he be a bona fide resident of, or be physically present in, a foreign country, as set forth in sec. 911(d)(1)(A) and (B).  As the courts have repeatedly held, the term "abode" has "a domestic * * * meaning" and essentially means "habitation" or "domicile."  Bujol, 53 T.C.M. (CCH) at 763-764.  Whereas a taxpayer can have more than one residence, he can have only one domicile.  See Jones, 927 F.2d at 853 ("Residence is therefore much less than domicile which requires an intent to make a fixed and permanent home.");  Dawson v. Commissioner, 59 T.C. 264, 270 (1972) (confirming that a taxpayer can be a bona fide resident of one country yet retain his domicile in another).  The tests for "abode" and "residence" are clearly distinct; since petitioner fails the former, it does not matter whether he can satisfy the latter.

[*16] section 6662 penalty. Sec. 7491(c). Respondent met his burden of production by showing that petitioner's wages did not qualify as foreign earned income excludable under section 911(a). See Rogers v. Commissioner, T.C. Memo. 2013-77, 105 T.C.M. (CCH) 1478 (2013). The burden of proof thus shifts to petitioners to show that the penalty does not apply. See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

The section 6662 penalty does not apply to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to * * * [it]." Sec. 6664(c)(1). The decision whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. A taxpayer may be able to demonstrate reasonable cause and good faith by showing reliance on professional advice. See ibid.

Petitioners' tax returns for all four years were prepared by a competent tax professional. His mother, acting under a power of attorney, made full disclosure to this professional of all relevant facts concerning petitioner's employment in Russia. The return preparer advised that petitioner's wages earned in Russia were eligible for exclusion under section 911(a). Although this advice was incorrect,

**[*17]** this is a technical area of tax law, and we are satisfied that petitioners reasonably relied on the advice they were given. Petitioners have carried their burden of proving that the accuracy-related penalty does not apply.

To reflect the foregoing,

<u>Appropriate decisions will be</u>

<u>entered</u>.