# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 17, 2014　　　　Decided April 17, 2015

No. 13-1241

WILLIAM D. ROGERS AND YEN-LING K. ROGERS,
APPELLANTS

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

———

On Appeal from the Order and
Decision of the United States Tax Court

———

*Yen-Ling K. Rogers*, Pro se, argued the cause for appellants. With her on the briefs was *William D. Rogers*, Pro se.

*Damon W. Taaffe*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Richard Farber*, Attorney. *Bethany B. Hauser*, Attorney, entered an appearance.

Before: BROWN, *Circuit Judge,* MILLETT, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: This case involves an appeal by Yen-Ling Rogers ("Rogers") and her husband William Rogers (together, "Appellants") challenging a decision of the Tax Court denying their request to redetermine their tax liability for 2007 and imposing a 20% penalty for negligently failing to follow the tax rules.

The United States income tax system reaches all U.S. citizens' income no matter where in the world it is earned, "unless it is expressly excepted by another provision in the Tax Code." *See Comm'r v. Schleier*, 515 U.S. 323, 328 (1995); *see also* 26 U.S.C. § 61(a) (defining "gross income" as "all income from whatever source derived," except as otherwise provided). There are many exceptions under the Tax Code, however. Relevant to this case, qualified Americans who live abroad can exclude from their taxable income "foreign earned income," which is defined as earned income "from sources within a foreign country or countries." 26 U.S.C. § 911(a)(1), (b)(1)(A). Internal Revenue Service ("IRS") regulations provide that income is only "from sources within a foreign country" if it is "attributable to services *performed by an individual in a foreign country or countries*." 26 C.F.R. § 1.911-3(a) (emphasis added). As a result, according to the IRS, qualified Americans who live abroad cannot use Section 911 to exclude any income from work performed in or over the United States or international waters. Only income for work performed in or over foreign countries can be counted as foreign earned income.

In 2007, Rogers, who is a U.S. citizen, lived in Hong Kong and worked as an international flight attendant for United Airlines ("United"). She flew and worked in and over foreign countries and also in and over the United States and over international waters. Nonetheless, she and her husband filed a tax return reporting all of her flight attendant earnings

as "foreign earned income." The Commissioner of the IRS, however, determined that Appellants owed a tax deficiency of $3,428.30 on the portion of Rogers's earnings attributable to her work outside foreign countries, as well as a 20% penalty.

Appellants petitioned the Tax Court to redetermine their income tax liability, arguing that the language of Section 911 authorized them to exclude all of Rogers's flight attendant earnings as "foreign earned income," and that they should not be charged the negligence penalty. The Tax Court disagreed. Citing the language of Section 911, its prior holdings, and IRS regulations, the court found that Appellants could only exclude the portion of Rogers's earnings that were related to her time spent working in or over foreign countries. *Rogers v. Comm'r*, 105 T.C.M. (CCH) 1478, 1479–80 (2013). The Tax Court also upheld the negligence penalty. *Id.* at 1480. Rogers and her husband then filed a timely appeal with this court.

Appellants argue that the Tax Court incorrectly applied Section 911. They contend that the language of Section 911 authorizes them to exclude all of Rogers's flight attendant income as "foreign earned income" because it was received "from sources within a foreign country or countries" – namely, Rogers's Hong Kong-based job. *See* 26 U.S.C. § 911. They also challenge the imposition of the negligence penalty, and ask this court to award costs and fees.

We agree with the Tax Court that the language of Section 911 and the IRS's regulations support the Commissioner's determination against Appellants. Rogers has failed to show that the Tax Court erred, or that the IRS's regulations interpreting Section 911 are unreasonable. We remand only for the Tax Court to address a factual issue that was raised and clarified at oral argument before this court.

## I. BACKGROUND

In 2007, Rogers worked for United as an international flight attendant based in Hong Kong. According to the parties' stipulations below, she flew a total of 74 flights between destinations in Asia and the United States. She performed both in-flight duties and some pre-departure and post-arrival work, and was generally paid according to her flight time. She received vacation time and benefits as part of her employment, and could receive "guarantee pay" for work she would have performed on flights that were canceled. The parties agreed at oral argument that, during the time when Rogers received guarantee pay, she was required to remain in Hong Kong, awaiting reassignment to another flight.

United paid Rogers $41,762.10 in wages during 2007, and provided her with an apportionment of her estimated duty time between minutes spent in or over foreign countries, in or over the United States, and over international waters. Appellants jointly filed their 2007 taxes, excluding *all* of Rogers's flight attendant earnings as "foreign earned income" under Section 911. *Rogers*, 105 T.C.M. (CCH) at 1478–79.

On December 30, 2010, the Commissioner sent Rogers and her husband a deficiency notice for the 2007 tax year, stating that they could not exclude the portion of Rogers's income earned while she was working in or over the United States and over international waters. That portion of her wages was not "foreign earned income" because it was not "attributable to services performed by an individual *in a foreign country or countries*." 26 C.F.R. § 1.911-3(a) (emphasis added). Based on United's duty time apportionment, the IRS concluded that Rogers and her husband owed $3,428.30 in taxes on the erroneously excluded wages. The IRS also assessed Rogers and her husband a

$685.66 "accuracy-related penalty" under a provision of the tax code that allows the Commissioner to impose a penalty equal to 20% of the underpayment if a taxpayer withholds taxes due to "[n]egligence or disregard of rules or regulations." 26 U.S.C. § 6662.

Appellants petitioned the Tax Court for a redetermination of their tax liability. The parties stipulated before the Tax Court to duty time apportionments far more favorable to Rogers than United's estimates; they also stipulated that Rogers was a "qualified individual" eligible for the foreign earned income exclusion. In their arguments to the Tax Court, Appellants claimed that they were entitled to exclude all of Rogers's flight attendant income as "foreign earned income"; that the value of Rogers's vacation pay, sick pay, guarantee pay, and training pay should be considered earned in Hong Kong and thus allocated to foreign earned income; and that they should not have been charged a penalty.

The Tax Court rejected all of Appellants' legal arguments. Citing its prior cases, the court ruled that Rogers could only exclude earnings for services actually performed in or over foreign countries, and that Appellants must pay taxes on the portion of Rogers's earnings attributable to time when she worked over international waters and in or over the United States. *Rogers*, 105 T.C.M. (CCH) at 1479 (citing *LeTourneau v. Comm'r*, 103 T.C.M. (CCH) 1229 (2012); *Rogers v. Comm'r*, 97 T.C.M. (CCH) 1573 (2009)). The court also concluded that most of Rogers's other benefits and pay, such as vacation and sick days, arose from Rogers's general work and should therefore be allocated according to Rogers's flight time. *Id.* at 1479–80. As to the accuracy-related penalty, the court found that Appellants had failed to carry their burden of showing that they acted with reasonable cause and in good faith in excluding all of the flight attendant earnings.

The Tax Court noted that the IRS had issued deficiency notices to Appellants for the exact same behavior in prior tax years. *Id.* at 1480. Using the new, stipulated apportionment, the court reduced the tax deficiency to $1,635.30, and adjusted the accuracy-related penalty downward to $327.06.

Rogers and her husband appealed to this court. Their chief argument is that the Tax Court erred in applying Section 911 and the IRS regulations. In particular, they contend that the language of Section 911 entitles them to exclude all of Rogers's flight attendant income as "foreign earned income" because it is "from sources within a foreign country." *See* 26 U.S.C. § 911(b)(1)(A). Appellants also challenge the accuracy-related negligence penalty, and ask the court to award them costs and fees.

## II. ANALYSIS

Appellants' primary argument is that the Tax Court erred in requiring them to apportion Rogers's flight attendant earnings because, in their view, Section 911 allows them to exclude *all* of her earnings from taxable income. We review the Tax Court's legal conclusions *de novo*. *See Byers v. Comm'r*, 740 F.3d 668, 675 (D.C. Cir. 2014).

Appellants note that Section 911 defines "foreign earned income" as earned income "*from sources* within a foreign country or countries." 26 U.S.C. § 911 (emphasis added). Focusing on the "from sources" language, they reason that, under the statute, the location where personal services are performed is irrelevant to the tax status of the earnings arising from those services. Instead, they argue, all that matters is the location of the *source* of the income. As a result, Appellants contend that all income related to Rogers's United Airlines job placement in Hong Kong – the ostensible foreign "source"

of her earnings – should be excluded. To bolster their legal argument, Appellants cite a number of cases that they claim show a practice by the IRS and the Tax Court of allowing pilots and other persons living abroad to exclude all of their income from taxation, rather than apportion it. Based on their reading of the statute and case law, they argue that the Tax Court incorrectly forced them to apportion Rogers's income.

We have little trouble dismissing Appellants' argument that the Tax Court erred in applying the law, because Appellants' presentation of both the law and prior cases is unconvincing. First, Appellants paint an incomplete portrait of the law. They focus on the language of the statute and fail to take account of the controlling IRS regulation. The regulation is telling. It states:

> Earned income is from sources within a foreign country *if it is attributable to services performed by an individual in a foreign country or countries*. The place of receipt of earned income is immaterial in determining whether earned income is attributable to services performed in a foreign country or countries.

26 C.F.R. § 1.911-3(a) (emphasis added). While this regulation does not speak directly to the treatment of income earned over international waters, a separate regulation defines the term "foreign country" to mean "any territory under the sovereignty of a government other than that of the United States," including, among other things, "the territorial waters of the foreign country" and "the air space over the foreign country." 26 C.F.R. § 1.911-2(h). The regulation thus makes explicit that income earned over waters not subject to any foreign country's jurisdiction would not be income earned "in a foreign country or countries" for purposes of Section 1.911-

3(a). In sum, it is clear that Appellants' position in this case is completely at odds with IRS's regulations.

An agency's regulation implementing its authorizing statute "is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *Household Credit Servs. v. Pfennig*, 541 U.S. 232, 242 (2004) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001)) (internal quotation marks omitted). This principle "appl[ies] with full force in the tax context." *Mayo Found. for Med. Educ. and Research v. United States*, 562 U.S. 44, 55 (2011). "Filling gaps in the Internal Revenue Code plainly requires the Treasury Department to make interpretive choices for statutory implementation at least as complex as the ones other agencies must make in administering their statutes." *Id.* at 56.

The IRS's regulatory limitation of income "from sources within a foreign country" to income attributable to services performed in a foreign country accords with the language of Section 911, particularly in light of the "default rule of statutory interpretation that exclusions from income must be narrowly construed." *Schleier*, 515 U.S. at 328 (internal quotation marks omitted). Furthermore, the regulation harmonizes with related sections of the Internal Revenue Code, in which the phrase "income from sources within" generally limits personal services income to income earned from services "performed in" a given jurisdiction. *See* 26 U.S.C. § 861(a)(3) (defining income from personal services as being "from sources within the United States" if those "labor or personal services [are] performed in the United States"); *id.* § 862(a)(3) (defining income from personal services as being "from sources without the United States" if those "labor or personal services [are] performed without the United States"). The IRS's regulation and its application here simply mirror

the use of similar "source" language in related sections of the Code, where "the source of income is the place where the services are performed." *Tipton & Kalmbach, Inc. v. United States*, 480 F.2d 1118, 1120 (10th Cir. 1973).

It is particularly noteworthy that Appellants do not contest the validity of § 1.911-3(a). And we have no basis to find that the regulation is "procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." Therefore, we are bound to give deference to the IRS's interpretation of the statute. *Pfennig*, 541 U.S. at 242; *see Tax Analysts v. IRS*, 350 F.3d 100, 102–03 (D.C. Cir. 2003) (applying *Chevron* deference to IRS tax regulations).

In light of the controlling regulation and Appellants' stipulation below that Rogers earned a significant portion of her wages for services performed in or over the United States and over international waters, the Tax Court did not err in requiring Appellants to pay taxes on that portion of Rogers's wages. Appellants have put forward no colorable argument for why those earnings should be considered "attributable to services performed . . . in a foreign country or countries." 26 C.F.R. § 1.911-3(a). Nor could they in the face of the IRS's regulation.

This conclusion does not conflict with precedent. Appellants claim to have unearthed a host of cases showing a longstanding practice by the IRS and the Tax Court of allowing the categorical exclusion of earnings from foreign-based jobs. Appellants' Br. 8. However, none of the cases cited by Appellants is controlling or on point. Most of the cases involve wholly unrelated issues, such as whether taxpayers qualify as bona fide residents of foreign countries for purposes of Section 911. *See, e.g.*, *Jones v. Comm'r*, 927 F.2d 849 (5th Cir. 1991). Contrary to Appellants'

characterization, these cases generally say nothing about how much of their income the taxpayers earned in the United States or over international waters, what portion of it they sought to exclude, or whether they could do so categorically. By contrast, in another cited case, the parties in fact stipulated that, if the airline pilot taxpayer were found eligible for the Section 911 exclusion, he *would* allocate his income according to his geographic flight time percentages. *See Schoneberger v. Comm'r*, 74 T.C. 1016, 1017 n.2 (1980).

We have found only one, non-binding case, uncited by Appellants, in which an international airline employee excluded the entirety of his salary under Section 911. But in that case, the Tax Court specifically noted that "no issue [was] raised with respect" to whether the salary constitutes foreign earned income. *Cobb v. Comm'r*, 62 T.C.M. (CCH) 408, 411 n.5 (1991). In contrast, the Tax Court has decided several recent cases specifically dealing with the question raised in this case and consistently limiting the Section 911 exclusion to income actually earned in or over foreign countries. *See LeTourneau*, 103 T.C.M. (CCH) 1229 (requiring apportionment of income by a flight attendant); *Rogers*, 97 T.C.M. (CCH) 1573 (same, in a case involving the instant Appellants). Appellants have shown no error in the Tax Court's application of Section 911 or the relevant IRS regulation.

\* \* \* \*

Although we reject Appellants' argument regarding the scope of Section 911, we will remand the case to the Tax Court on one factual issue that was raised and clarified at oral argument before this court.

As part of Rogers's employment, she was eligible to receive "guarantee pay" when a flight she was scheduled to work was canceled. In 2007, Rogers received guarantee pay for one canceled flight. As the parties explained at argument, Rogers was expected to remain in Hong Kong during this period, available in the event that United chose to assign her to a new flight. Government counsel conceded at oral argument that he could think of no reason why any portion of this payment to Rogers – for time spent on assignment in and with orders to stay in a foreign country – would be included as taxable income. In other words, Government counsel acknowledged that the entire amount is excludable pursuant to Section 911. We agree.

Given the vagaries of guarantee pay and the different ways in which it may be earned under different employment contracts, we take no position on whether every form of guarantee pay should be excludable under Section 911. However, we agree with the Commissioner and Appellants that in this case there is no reason to apportion the guarantee pay earned by Rogers in Hong Kong. The Tax Court's opinion is unclear about the treatment of this payment, which amounted to $1,041.82. For this reason, we remand the case for the Tax Court to ensure that the entirety of this payment has been properly excluded from Appellants' taxable income.

We reject the remainder of Appellants' objections to the Tax Court's apportionment calculations. They have failed to identify a basis for setting aside the stipulations to which they agreed below or any clear error in the Tax Court's factual determinations regarding how other forms of non-flight compensation (for example, vacation or sick pay) should be apportioned. Finally, Appellants' objection notwithstanding, apportioning the time Rogers worked on the basis of minutes rather than days is expressly contemplated by IRS regulation

in a related context. See 26 C.F.R. § 1.861-4(b)(2)(ii)(E) (noting that, in calculating the amount of compensation received for labor or personal services performed within the United States on a time basis, "[a] unit of time less than a day may be appropriate").

\* \* \* \*

Appellants' claims regarding the accuracy-related penalty and the award of costs and fees lack merit. Because "[t]he Tax Court's assessment of an accuracy-related penalty is a factual determination," it is reviewed for clear error. *Calloway v. Comm'r*, 691 F.3d 1315, 1334 (11th Cir. 2012). Appellants have not demonstrated any error in the Tax Court's conclusion that they failed to meet their burden of showing reasonable cause and good faith in excluding their income earned in and over the United States and over international waters. As the Tax Court noted, Appellants had been issued a deficiency notice for the same behavior in prior tax years, and were on notice that they were not complying with the applicable IRS regulations. *See Rogers*, 97 T.C.M. (CCH) 1573.

Finally, Appellants are not entitled to costs and fees under 26 U.S.C. § 7430. That section provides that Appellants are only entitled to costs and fees if (1) they prevail in this appeal and (2) the Government cannot establish that its position was "substantially justified." *Id.* § 7430(c)(4)(A), (B). Appellants have failed to prevail on almost all of their claims, and the Government has easily shown that the Commissioner's position was "substantially justified." Therefore, Appellants' claim for fees and costs is denied.

## III. CONCLUSION

For these reasons, we affirm the judgment of the Tax Court, with only one caveat. We remand the case to ensure the proper allocation of Rogers's guarantee pay.

*So ordered.*